Clarence J. Henry, J.
This is an application, on show cause, for an injunction pendente lite, restraining the defendant Kenyon from engaging in any business which competes with the plaintiff in the Counties of Monroe, Genesee, Livingston, Ontario, Wayne, Wyoming and Tates, and within a radius of 100 miles thereof, and restraining the defendant Macke-Williamson from employing the defendant Kenyon.
*805 The plaintiff is distributor for VISIrecord, Inc., a manufacturer of vertical visible filing systems for business use. On or about November 21,1957, he entered into an associate distributor contract with the defendant Kenyon whereby the latter became the sole distributor of the VISIrecord systems in the above-named counties, with exclusive franchise to sell, install, service and design such systems for specific customer use. The contract provided that the defendant Kenyon would “ not become engaged or interested in any manner in any business which competes with the Distributor ’ ’ in said counties or within a radius of 100 miles thereof for the period of one year after the contract terminated.
The contract was renewed in writing on October 1, 1960, to run until December 31, 1961, but was terminable at any time by either party upon 45 days’ notice to the other.
The defendant Kenyon ceased working for the plaintiff about September 26, 1961, at which time he entered the employ of the defendant Macke-Williams on. The latter handles filing systems which compete with the plaintiff. The moving affidavit alleges that the defendant Kenyon was induced by the defendant MackeWilliamson to break his associate distributor contract in order that the former might enter the employ of the latter, who would thereby obtain the plaintiff’s confidential customer lists and become familiar with the plaintiff’s special techniques and training.
The submitted papers present a lively dispute as to whether the associate distributor contract was terminated by abrupt resignation by the defendant Kenyon on October 20, 1961, as claimed by the plaintiff, or by mutual consent on September 26, 1961, as claimed by the defendant Kenyon.
Ordinarily sharp disputes of fact militate against the issuance of an injunction pending trial (Town & Country House & Home Serv. v. Newbery, 119 N. Y. S. 2d 324 [1952]; Appollo Stationery Co. v. Pilmar, 11 Misc 2d 263 [1958]), but the dispute over the manner in which the defendant Kenyon’s employment relationship with the plaintiff ceased cannot have that effect herein. If, as claimed by the defendant Kenyon, the contract was terminated by mutual consent, such claimed consent collides head-on with subdivision 2 of section 33-c of the Personal Property Law, which provides that “A written agreement * * * which contains a provision * * * that it cannot be terminated orally * * * cannot be terminated by mutual consent unless such termination * * * is evidenced by a writing signed by the party against whom it is sought to enforce the termination ”. The contract herein contains a provision that it may not be *806 altered orally, and there is no indication of written consent on the part of the plaintiff. If, on the other hand, the undated resignation of the defendant Kenyon (stated therein to be effective Oct. 16, 1961) is regarded as an election on his part to exercise his agreed privilege to terminate on 45 days ’ notice, he must be held to have affirmed the contract including the provision restricting his conduct thereafter. Thus, in either event, the limitation remains effective, and the dispute over the manner in which the defendant Kenyon’s employment ceased is immaterial on this application.
More serious is the question concerning the effect of the restrictive provision. Equity demands that such provisions, even when formally agreed to, be critically inspected, and enforcement depends in principal measure upon the outcome of a balancing between the interests of the employer in protection of his business and those of the employee in relief from undue hardship. Both parties have lively interests in this case, the plaintiff with a wide distributorship to protect, and the defendant Kenyon, having been engaged in the “ systems ” business for many years, with little knowledge of other fields, whereby to earn his living. Weighing both, the one-year time period and the seven-county area (coincident with the defendant Kenyon’s employment area) restrictions do not appeal as unreasonable provisions for the protection of the plaintiff, if the limiting clause is otherwise enforcible.
Where trade secrets, confidential customer lists, and like intimate commercial information are divulged to an employee incident to his employment, enforcement will follow if the limitation is reasonably schemed. It is concluded that no trade secrets, as such, were involved in the relationship between the plaintiff and the defendant Kenyon. Examination of the several affidavits and exhibits submitted satisfies that, while the plaintiff and his manufacturer have developed a refined method of training their votaries in sales, service and design for specific use, vertical visible filing systems are substantially similar in construction and operation, and information imparted to the defendant Kenyon did not reach the stature of trade secrets. With regard to the customer list, a dispute — not determinable from the affidavits — exists as to whether such a list was provided by the plaintiff and, if so, to what extent. However, in this connection — and also in connection with the matter of trade information — it is to be noted, as an undisputed fact, that the defendant Kenyon, during his last several months with the plaintiff, employed as an assistant one Thomas Badger, who became familiar with the trade information and the customer contacts *807 of the defendant Kenyon. Badger entered the employ of the defendant Macke-Williamson at the same time the defendant Kenyon did and was thus, ostensibly, in a position to provide his new employer with any information concerning the plaintiff’s business which was available to the defendant Kenyon. No contract existed between Badger and the plaintiff, although his employment by the defendant Kenyon was known to the plaintiff. No action to restrict Badger has been taken and, because of the unlimited accessibility of his knowledge to the defendant Macke-Williamson, an injunction restraining the latter from employing the defendant Kenyon would have no practical effect other than undue hardship upon the latter.
Necessarily included in the broad coverage of the provision not to compete was an agreement not to compete in connection with such customers as the defendant Kenyon encountered during his tour of employment with the plaintiff. With these he had opportunity to ingratiate himself, and he is now in a position to capitalize upon such favor as he found in their eyes. As this situation was fostered and nutured by his relationship with the plaintiff, it appeals as unfair to permit him now to direct his advantage against the interests of the plaintiff, very possibly producing thereby irreparable loss of good will. (Audiographic of N. Y. Corp. v. Thermionic Corp., 198 N. Y. S. 2d 508 [1960]; Town & Country House & Home Serv. v. Newbery, 119 N. Y. S. 2d 324, supra; see, also, I. Edward Brown, Inc. v. Astor Supply Co., 4 AD 2d 177, 179 [1957]; Bates Chevrolet Corp. v. Haven Chevrolet, 13 A D 2d 27 [1961].)
The application for an injunction pendente lite is granted as against the defendant Kenyon to the extent of restraining him from competing with the plaintiff in any manner insofar as persons or corporations who were customers of said defendant during the period of his employment by the plaintiff are concerned, such restraint to continue until the action herein is tried, or until December 31, 1962, whichever arrives first. The relief granted is conditioned upon the plaintiff submitting a list of such customers to defense counsel, and a surety undertaking in the sum of $500 to the court for approval, upon settlement of the order herein.
The application for an injunction pendente lite against the defendant Macke-Williamson is denied.