430 P.2d 504

**SHAKEY'S INCORPORATED, Plaintiff-Appellant,**

v.

**Charles J. MARTIN and Mary Lou Martin, husband and wife, Roy Moore, Marvin K. Moore, Boise Pizza Corporation, and Idaho Falls Specialty Foods, Inc., Defendants-Respondents.**

No. 9845.

Supreme Court of Idaho.

July 19, 1967.

Clemons, Skiles & Green, Boise, and Howard, Prim, Smith, Rice & Downs, San Francisco, Cal., for appellant.

Richards, Haga & Eberle, Boise, for respondent.

McFADDEN, Justice.

Presented for resolution by this appeal is the issue of the validity of the following clause contained in a franchise agreement dated September 25, 1961, between Shakey's Incorporated, appellant, as franchisor, and Charles J. Martin, one of the respondents, designated as the vendee-franchisee, Martin later having assigned the agreement to respondent Boise Pizza Corporation:

"Upon termination of this Agreement for any reason and for a period of one (1) year thereafter, neither Vendee-Franchisee nor its principals or officers will engage in the production or sale of pizza products, or have any employment or interest in any firm engaged in the production or sale of pizza products in a location within a radius of thirty (30) miles from the franchised premises or thirty (30) miles from any other premises franchised and licensed by Systems or its predecessor under an Agreement or Agreements similar to this Agreement."

In brief, other pertinent clauses of the franchise agreement provided that three separate corporations (later merged into appellant) as first parties granted to Martin a twenty-year franchise to operate a pizza parlor restaurant and to use the service mark "SHAKEY'S," its trade name, style of decor and techniques of doing business, within a designated area; the franchisee to operate at only one location, with the business to be designated as "the franchise premises." Martin agreed to pay a fixed fee upon the execution of the agreement and a percentage of gross food sales, computed in accordance with the agreement. Martin agreed to maintain certain standards of advertising, decor and quality of product "at all times in order to preserve the value and reputation of said service mark, trade name and style and related

good will and to assure the success and value of this Agreement." The franchisor agreed to conduct training schools, to assist in selection of locations and to render aid in related objectives.

The events leading to this appeal commenced in 1960 when respondent Charles J. Martin obtained a franchise from appellant's predecessors, and as a sole proprietor, opened a pizza restaurant under the franchise in Spokane, Washington. The following year, Martin expanded his operation and opened another franchised pizza restaurant in Moscow, Idaho, having with him as partners, respondents Roy Moore and Marvin K. Moore (not related), who held a minority interest in the partnership, which business was later incorporated. In October, 1961, Martin opened the franchised pizza restaurant in Boise, Idaho, operating as Boise Pizza Corporation with both Moores in the firm. The restaurant operated by this corporation, one of the respondents, is the subject of this litigation. In May, 1962, a small pizza pantry was opened in Pullman, Washington, serviced in part by the Moscow, Idaho, pizza restaurant. The Spokane operation was sold by Martin in 1963.

Martin was desirous of expanding his operations into Idaho Falls and Twin Falls, Idaho, and made a number of attempts to secure appropriate franchises from appellant for that territory. He was also interested in securing other "master franchise operations" in a couple of other states.

Differences arose between Martin and appellant primarily over Martin's desire to expand into other territories, which differences finally led to a series of letters between the attorney representing Martin (representing the Boise Pizza Corporation, of which he was the president and manager, and with his wife, the principal stockholders) and appellant's attorney. These letters culminated in a statement by Martin's attorney in a letter dated June 18, 1964, that:

"* * *. Mr. Martin, as a business decision, has concluded that, under the existing circumstances and the declaration that they constitute a violation of the franchise agreements, he must agree with you that the franchise agreement in Boise, Idaho, should be terminated. This same result must necessarily follow in Pullman, Washington, and Moscow, Idaho. This is an unfortunate situation but none of the parties involved seem to interpret the terms of the franchise in the same manner."

Appellant, by its attorney, replied by letter of June 23, 1964, stating:

"My clients accept the agreement set forth on page 3 of your letter that the franchise agreement relating to Boise, Idaho, is now terminated. Similarly, we confirm your agreement as to the termination of the Pullman and Moscow franchises. It is understood that, although these franchises are now terminated, my clients are willing to defer the enforcement of paragraph 13 of Section C until June 30, 1964. This deferral is not to be construed as a modification or waiver of any rights of the franchisors, but is simply an accomodation to your client.

"At June 30, it is agreed that your client will cease the sale of any pizza products at any of the three locations and that he will promptly remove all evidences of their prior identification with the franchisors."

In this letter, appellant by its attorney notified Martin it did not wish to acquire the locations. On June 25, 1964, Martin and his wife, by contract, sold all their holdings in the Boise Pizza Corporation and the Moscow Pizza Corporation to respondents Roy Moore and Marvin K. Moore, for $63,500.00, payable in monthly installments.

Following the sale, respondent Boise Pizza Corporation continued operation of the pizza restaurant at the same location as previously, and carried on the business under the name of "Rathaus Pizza Shoppe." Various signs and distinctive indicia of appellant previously maintained on the premises were removed.

Appellant instituted this action on October 21, 1964, to enjoin the named defend-

ants-respondents from engaging in the sale of pizza or pizza products within a radius of thirty miles of the Boise restaurant. (Injunctive relief for other locations was also sought, not pertinent to this appeal.) Appellant also sought an accounting and payment of profits from sale of the pizza products since June 25, 1964, damages and attorneys fees as provided in the agreement. Respondents' answer set up various defenses. A pre-trial hearing was held and a pre-trial order entered.

The issues as framed by the pre-trial order were tried to the court; following the trial, findings of fact, conclusions of law and judgment were entered in favor of the respondents. This appeal was taken from that judgment.

Appellant assigns as error the trial court's finding:

"That the physical setup of the premises, the use of long beer handles, exposed cooking, furniture types, music, limited menu, etc., are subject to limitation by anyone and are not protectable as a property interest by plaintiff."

This finding of fact is immaterial to the final resolution of issues presented by this appeal, and needs no further discussion. Appellant also assigns as error two conclusions of law by the trial court:

"7. That the plaintiff does not have a legitimate and protectable business interest in a method and style of doing business, such as the use of a physical setup of premises, the use of long beer handles, exposed cooking, a type of furniture, music, limited menu, etc.; that the making and sale of pizza is in the public domain and a competitive business; that the defendants, Roy Moore, Marvin K. Moore and Boise Pizza Corporation, have not, since July 1, 1964, sold plaintiff's product, used its secret formulas, or its name.

"8. That plaintiff's registered service mark has been and is protected, as are its trade secrets; I therefore conclude that clause A13 of the contract dated Septem-

ber 25, 1961, between Charles J. Martin and plaintiff's predecessors, is, in this instance, a penal clause, which is in restraint of trade and unreasonable and against public policy."

This appeal deals with an area of law that has been before this court on several occasions, i. e., non-competition clauses. See: Ryska v. Anderson, 70 Idaho 207, 214 P.2d 874, (sale of a mercantile business dealing in groceries, hardware and dry goods, a damage action, with judgment for plaintiff affirmed); Vancil v. Anderson, 71 Idaho 95, 227 P.2d 74, (sale of a restaurant and beer parlor, a damage action, with judgment for plaintiff affirmed); Marshall v. Covington, 81 Idaho 199, 339 P.2d 504, (a non-competition clause in an employment contract of a physician, with judgment granting an injunction against the physician affirmed); Drong v. Coulthard, 87 Idaho 486, 394 P.2d 283, (a non-competition clause in an employment contract of a credit bureau where specific enforcement was denied on the grounds of employer's inequitable conduct).

The parties are in accord that the provisions of the non-competitive clause are not unreasonable as to length of time or area of restriction, which differentiates this case from the multitude of cases dealing with those particular issues. See Annot: 41 A.L.R.2d 15, Enforceability of restrictive covenant, ancillary to employment contract as affected by duration of restriction and 41 A.L.R.2d 94, idem, as affected by territorial extent of restriction; 45 A.L.R.2d 77, Enforceability of covenant against competition ancillary to sale or other transfer of business, etc., as effected by duration of restriction, and 46 A.L.R.2d 119, idem, as effected by territorial extent of restriction.

The decisive issue on this appeal is whether appellant by reason of the franchise agreement has a valid, recognizable and existing business property interest, protectable in an action such as this. It is the contention of appellant that as a franchisor it does maintain and have such a property interest and that it can properly

seek inforcement of the contract provision by way of injunctive relief, or by way of damages, or both. Respondent, on the other hand, asserts that the trial court correctly concluded that there was no protectable property interest in appellant, pointing to the following findings of fact by the trial court from which appellant did not appeal:

"That the making and sale of pizza does not involve any trade secrets and the making and sale of pizza is in the public domain and is a highly competitive business; that the defendants are not using plaintiff's secret sauce formulas in their present business operations and have not done so since July 1, 1964; * *.

"That the plaintiff's method of doing business, other than the use of the name 'Shakey's', can be copied and is being copied by parties who have never been franchisees of plaintiff."

Throughout the development of the law in this area of restraint of trade by way of non-competitive clauses contained in various agreements, the courts have always been faced with two conflicting basic principles of law: (1) that under the common law, agreements in restraint of a man's right to exercise his trade or calling were against public policy and hence unlawful, 36 Am.Jur. Monopolies, Combinations, etc., § 50, p. 530; and (2) that the contracts of persons sui juris are to be enforced. 5 Williston, Contracts (Rev.Ed., 1937) § 1629 A, p. 4558.

In resolution of this conflict in these basic principles the courts have adopted certain guidelines in arriving at their decisions. In the very early case of Mitchel v. Reynolds, 1 P. Wms. 181, 24 Eng.Rep. 347 (Q.B. 1711), the court, dealing with a covenant not to compete, ancillary to the sale of a business, enunciated a rule that has been a guide for courts ever since. The effect on the law of Mitchel v. Reynolds, is discussed in 73 Harvard Law Review 625, 629:

"The court pointed out that the presumption of invalidity stems from the 'mischief' which the restraints may cause, first, in the possible loss of the covenantor's means of earning a livelihood and second, in the loss to society of the services of a useful member. The court also noted that such covenants may be used by corporations as a means of monopolization. But to refuse to enforce reasonable restraints accompanying the transfer of a business would result in unnecessary hardship or loss to a craftsman ready to retire but forced to continue in trade or to sell out at a lower price because no one would risk the purchase of his business without the protection of an enforceable covenant not to compete.

"The opinion noted, however, that the effects may be different in the case of covenants in employment agreements, for they are subject to 'great abuses * * * from masters, who are apt to give their apprentices much vexation on this account, and to use many indirect practices to procure such bonds from them, lest they should prejudice them in their custom, when they come up to set up for themselves.' The inference is clear that the burden of showing a just reason for the restraint might be greater in these cases."

Taft, J., in United States v. Addyston Pipe & Steel Co., 85 F. 271 (6th Cir. 1898) aff'd, Addyston Pipe, Etc., Co. v. United States, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136, in discussing the cases where such restraints were not to be held illegal stated:

" * * * [C]ovenants in partial restraint of trade are generally upheld as valid when they are agreements (1) by the seller of property or business not to compete with the buyer in such a way as to derogate from the value of the property or business sold; (2) by a retiring partner not to compete with the firm; (3) by a partner pending the partnership not to do anything to interfere, by competition or otherwise, with the business of the firm; (4) by the buyer of property not to use the same in competition with the business retained by the seller;

and (5) by an assistant, servant, or agent not to compete with his master or employer after the expiration of his time of service. Before such agreements are upheld, however, the court must find that the restraints attempted thereby are reasonably necessary (1, 2, and 3) to the enjoyment by the buyer of the property, good will, or interest in the partnership bought; or (4) to the legitimate ends of the existing partnership; or (5) to the prevention of possible injury to the business of the seller from use by the buyer of the thing sold; or (6) to protection from the danger of loss to the employer's business caused by the unjust use on the part of the employé of the confidential knowledge acquired in such business." 85 F. at 281.

"It would be stating it too strongly to say that these five classes of covenants in restraint of trade include all of those upheld as valid at the common law; but it would certainly seem to follow from the tests laid down for determining the validity of such an agreement that no conventional restraint of trade can be enforced unless the covenant embodying it is merely ancillary to the main purpose of a lawful contract, and necessary to protect the convenantee in the enjoyment of the legitimate fruits of the contract, or to protect him from the dangers of an unjust use of those fruits by the other party." 85 F. at 282.

Immediately the question arises, what, if any, interest does appellant wish to protect? Appellant, as the grantor of the franchise, agrees that it will not grant any other franchise within the territory mentioned in the agreement, which provision inures to the benefit of the franchisee by excluding competition by other franchisees in the same area. During the course of the operation by the franchisee under the terms of the agreement, it is contemplated that the franchisee will maintain a high standard of service, product and decor and cleanliness, will use the service mark of "Shakey's," will advertise under that name and will generally promote the business for the benefit of the franchisee himself, as well as bringing into being a recognition by members of the public who patronize the business that the high standard of the service, product and decor is an attribute of places operating under the service mark of "Shakeys" and under the Shakey's franchise. In other words, a goodwill becomes established in the minds of the public who patronize the establishment.

In Budget Rent-A-Car Corporation of America v. Fein, 342 F.2d 509, 517 (5th Cir. 1965), the court discussed the nature of a franchisor's business as follows:

"What Budget is really doing here is a selling job, a selling job not to go out of business, but to get itself and another in new and more business. It has franchises for sale, and its livelihood depends on selling and maintaining them. And by this covenant [not to compete] it seeks to protect its product vis-a-vis its prospects who are unusual prospects in that they may become competitors—or so Budget fears."

Here, too, appellant has a product to sell, viz., franchises. That this franchise is of value was recognized by Martin, since he was desirous of expanding his operations.

While it is true, as stated by the trial court in its conclusions of law, that appellant has no protectable business interest in a method and style of doing business, yet this conclusion of law overlooks the basic product that appellant had to sell, i. e., its franchise, and that the franchisee, to secure the benefits of the franchise, executed the non-competition clause effective upon termination. The record discloses, although no finding of fact was made on this point, that subsequent to termination of the agreement, and contrary to the explicit contract provisions, the continued operation by Boise Pizza Corporation of a pizza restaurant and parlor on the premises previously franchised has affected the ability of appellant to secure another franchisee in the territory. Nothing has been shown by this record that would

reflect any adverse effect on the public in enforcement of this provision. Hence, it is our conclusion that, aside from the aspects of the non-protectable "interest in method and style of doing business, such as the use of long beerhandles, exposed cooking, a type of furniture, music, limited menu, etc.," as found by the trial court, appellant does have a legitimate interest. based on the franchise agreement which is protectable and not penal or unlawfully in restraint of trade.

Support for the foregoing conclusion that the franchisor has a protectable business interest is to be found in the following authorities, which although involving different factual situations, do recognize the existence in a franchisor of a protectable business interest: Pelton's Spudnuts, v. Doane, 120 Utah 366, 234 P.2d 852 (1951). McDonald's System, Inc. v. Sandy's Inc., 45 Ill.App.2d 57, 195 N.E.2d 22 (1963), wherein that court stated: "The Franchise described in the agreement of December 16, 1955, was a valuable property right and so recognized by appellees '* * *.'" 195 N.E.2d at 29. Rudiger v. Kenyon, 32 Misc. 2d 804, 224 N.Y.S.2d 545 (1962), wherein an injunction pendente lite was issued to restrain one defendant from engaging in business which competed with plaintiff; the plaintiff, a distributor of a particular type of filing system, entered into an agreement granting to the defendant an exclusive distributorship of the system with the franchise limited to certain designated area. The relationship terminated, and the defendant entered into the employ of another company in competition. The trial court granted the injunction pendente lite, stating: "as this situation was fostered and nurtured by his [defendant's] relationship with the plaintiff, it appears as unfair to permit him now to direct his advantage against the interests of the plaintiff, very possibly producing thereby irreparable loss of good will." Prentice v. Rowe, 324 S.W. 2d 457 (Mo.App., 1959), involving a franchise contract for artificial insemination of cattle, wherein it was held that one restrictive covenant was invalid because, although it was limited as to time, it was not limited as to area, and it was further held that the other restrictive covenant being limited as to both time and area was valid. Sonotone Corporation v. Ellis, 2 N.J.Super. 419, 64 A.2d 255 (1949), aff'd., 67 A.2d 186; Sonotone Corporation v. Hall, 2 N.J. Super. 482, 64 A.2d 473 (1949); Sonotone Corporation v. Baldwin, 227 N.C. 387, 42 S.E.2d 352 (1947). Each of these last three cited cases involved a dealership agreement between the plaintiff corporation and the individual dealer, containing restrictive covenants. Budget Rent-A-Car Corporation of America v. Fein, 342 F.2d 509 (5th Cir., 1965), held an agreement not to compete contained in a preliminary negotiations agreement prior to entry into a franchise agreement was unenforceable, as being unreasonable in the area of restriction. However, the court did recognize that the franchisor in such case did have a protectable interest. Therein the court stated:

"If Fein had actually bought the franchise and this covenant pertained to the eventuality of his selling out and thereafter competing, it would seem likely that the above cases would apply and a much stronger argument could be made for the enforceability of the covenant." 342 F. 2d 517.

Agreements not to compete have been recognized by this court in Ryska v. Anderson, 70 Idaho 207, 214 P.2d 874, where the agreement was contained in an agreement of sale of a business, Vancil v. Anderson, 71 Idaho 95, 227 P.2d 74, where the agreement was contained in a contract for sale of a restaurant, beer parlor, cigar and confectionery store, and in Marshall v. Covington, 81 Idaho 199, 339 P.2d 504, where the agreement not to compete was contained in an employment contract of a physician and surgeon, wherein it is stated:

"We conclude that the restriction here imposed is reasonable both as to duration and territorial extent. It is not against public policy. The detriment or inconvenience to the public which may be in-

volved is not sufficient to justify denial to the plaintiffs of *the legitimate protection provided for by their contract.* Hardship to the defendant is not, standing alone, a ground for granting relief. [Referring to defendant's contention he should be relieved from the restrictive provision of the agreement.] He was sui juris. He does not contend that he was misled in entering into the agreement, or that there was any failure on the part of plaintiffs·to perform. As applied to him the limitations are not unreasonable nor unduly oppressive, and being supported by a consideration, he is bound by his contract to comply. Such a restrictive covenant in a contract between members of a learned profession may be regarded as distasteful and out of harmony with the dignity of professional men; *but the courts must be guided by the overriding public interest in the preservation of the freedom of contract.*" (Emphasis added.) 81 Idaho at 206, 339 P.2d at 508.

The award of damages for breach of restrictive covenant has been recognized by this court as a proper remedy for such breach. Ryska v. Anderson, supra; Vancil v. Anderson, supra. In Marshall v. Covington, supra, however, injunctive relief and not damages was awarded, the court stating: "\* \* \* nor can plaintiffs be adequately compensated in damages, since the detriment is a continuing one, and difficult of proof." 81 Idaho at 208, 339 P.2d at 509.

Drong v. Coulthard, 87 Idaho 486, 394 P.2d 283, was an action to enjoin a former employee from engaging in a competing collection and credit reporting business. One of the terms of the contract of employment provided that the employee, upon termination of the agreement, would not compete during a brief period within a designated area. The trial court refused to grant the plaintiff's request for injunction and this court affirmed that decision on the theory that during the course of the employment the employee had been induced to remain as an employee by a promise that

the employee could acquire an interest in the business. The trial court found a breach of this promise by the owner's widow, and because of such breach would grant no equitable relief by way of injunction. In affirming the judgment in the case, this court quoted from Economy Grocery Stores Corporation v. McMenamy, 290 Mass. 549, 195 N.E. 747 (1935), as follows:

" ' \* \* \*. A suit in equity like the present, to enforce a negative covenant made by the defendant, is in reality a petition for specific performance. (citation) Specific performance is not a matter of strict and absolute right. A petition of that nature is addressed to the sound discretion of the court. It will not be granted if the conduct of the plaintiff is savored with injustice touching the transaction, even though there is no sufficient ground for the rescission of the contract. \* \* \*.' " 87 Idaho at 496, 394 P.2d at 289.

██ In the instant action, even though it is our conclusion that the trial court erred in its determination that the provision of the agreement, the subject of this action, was invalid, it does not follow that decree should be entered for appellant. Other issues which, because of the trial court's determination of invalidity of the franchise provision, were not considered, must first be resolved. However, it is deemed appropriate at this time to point out that should the trial court resolve the issues favorably to appellant, "The granting or refusing of injunctive relief rests in the sound discretion of the court. (citations) The exercise of such discretion by the trial court in granting or refusing a temporary injunction will not be reversed on appeal unless a clear abuse of discretion is shown." Unity Light & Power Company v. City of Burley, 83 Idaho 285, 361 P.2d 788. Among other items for consideration by the trial court is the lapse of time between the alleged breach of the contract provision and the issuance of this opinion, which although admittedly not chargeable to appellant's fault, could conceivably affect the propriety

of injunctive relief. See: Forstmann v. Joray Holding Co., 244 N.Y. 22, 154 N.E. 652 (1926).

This court, as previously pointed out, has on two occasions recognized that a party may be entitled to a judgment for monetary damages for breach of non-competitive provisions in an agreement of sale. Ryska v. Anderson, supra; Vancil v. Anderson, supra. That such a judgment in a proper case may be the only relief that can properly be afforded necessarily follows.

In Drong v. Coulthard, supra, this court has likened an action to enforce by injunction the non-competitive clause of an employment contract unto an action for specific performance. Suchan v. Rutherford, 90 Idaho 288, 410 P.2d 434, involved issues presented on a counterclaim for specific performance of a real estate contract, wherein the vendor sought specific performance of the contract. There the trial court granted the relief prayed for by the vendor by decreeing specific performance of the contract as against the vendee. This court by its majority opinion held that the remedy by way of monetary damages was adequate, plain, speedy and complete in the case, and no decree of specific performance should have issued. The rationale of the case was that the remedy of specific performance of a land sale contract comes not as a matter of right but rests in the discretion of the court.

The instant action is one based in equity, and hence by reason of our determination that the trial court erred in its conclusion that appellant did not have a protectable interest in the franchise, the cause must be reversed and remanded to the trial court for further proceedings.

The judgment is reversed and remanded with directions to the trial court to review the evidence, and to consider any additional evidence either party may desire to offer on issues not previously resolved, and to make its findings of fact and conclusions of law, and enter judgment accordingly.

Costs to appellant.

TAYLOR, C. J., SMITH annd SPEAR, JJ, and NORRIS, District Judge, concur.