XEROX CORPORATION, Respondent, v. JOHN T. NEISES et al., Appellants.

First Department, December 17, 1968.

*Haliburton Fales, 2d* of counsel (*Jeffrey A. Barist* with him on the brief; *White & Case,* attorneys), for appellants.

*Whitney·North Seymour* (*Whitney North Seymour, Jr., James W. Harbison, Jr.,* and *Anthony L. Fletcher* with him on the brief; *Simpson Thacher & Bartlett,* attorneys), for respondent.

BASTOW, J. This appeal presents the issue as to the extent that injunctive relief should be granted *pendente lite* to an employer against its former employee pursuant to the provisions of a writing executed by the employee during the period of employment.

The corporate defendant ("Dennison") and individual defendant ("Neises") — presently employer and employee — appeal from an order enjoining each preliminarily from (a) continuing that relationship insofar as it relates to employment in "xerography" and (b) the utilization by either of "any information, knowledge or data." Neises may have received during his employment by plaintiff ("Xerox") "relating to trade secrets, formulas, business processes, methods, machines, manufacturers, compositions, inventions, discoveries or other matters, which are proprietary or confidential to Xerox".

From 1961 to 1968 Neises was employed by Xerox. In July of the latter year he voluntarily resigned and accepted employment with Dennison. This action was promptly commenced seeking, among other things, permanent injunctive relief.

Neises' original employment with Xerox was as a salesman. During the ensuing years he received various promotions and in late 1966 was named manager of plaintiff's Business Products & Systems Control Department. Prior thereto and in July, 1966, while holding the title of Manager of Divisional Planning, Neises unilaterally executed a writing entitled "Employee Patent and Confidential Information Agreement."

Inasmuch as this instrument is the focal point of the litigation it requires brief analysis. Therein Neises in consideration of his employment by plaintiff made certain promises. While not germane to the issues presented in this action but in view of the less clear portions of other provisions of the writing it should be noted that in the opening paragraph ("A") Neises agreed that during his employment he would not "directly or indirectly, serve, advise or be employed by any individual, firm or corporation engaged in the same or similar line of business or research as that carried on by Xerox."

Next, the writing ("D") provided that during or subsequent to Neises' employment by Xerox he would not disclose "any information, knowledge or data * * * relating to trade secrets, formulas, business processes, methods, machines, manufactures, compositions, inventions, discoveries or other matters,

which are proprietary or confidential to Xerox." This portion of the agreement has been implemented, as heretofore described, in the order granting preliminary restraint. Such temporary relief was not objected to by defendants at Special Term or in this court and will be continued by the provisions of the order to be entered hereon.

Pertinent here, however, are two other paragraphs ("B" and "E") of the instrument. The first provided that for two years following termination of his employment Neises would not "independently engage in xerography or, directly or indirectly, serve or advise in xerography or be employed in xerography by any individual, firm or corporation." The other paragraph ("E") defined "xerography" as "the art of forming and utilizing an electrostatic charge pattern to make visible images directly or through one or more intermediate steps, including, without limitation, the formation of an image in response to the action of light."

It was pursuant to the provisions of these two paragraphs that Special Term restrained the defendants *pendente lite* from continuing the relationship of employer and employee in "xerography whether as 'President' or 'General Manager' of the Copier Division [of Dennison], or otherwise." This court granted a stay of this portion of the order pending determination of the appeal so presumably the employment of Neises by Dennison continues.

Thus, it appears that the major portion of the relief sought in the complaint was granted by Special Term. It is familiar law that "Preliminary injunctions which in effect determine the litigation and give the same relief which is expected to be obtained by the final judgment, if granted at all, are granted with great caution and only when required by imperative, urgent, or grave necessity, and upon clearest evidence, as where the undisputed facts are such that without an injunction order a trial will be futile." (28 N. Y. Jur., Injunctions, § 19.) In *Yome* v. *Gorman* (242 N. Y. 395, 401–402) it was said: "If [the preliminary judicial restraint] stands, there will be nothing left to try * * * . Such an injunction, if ever permissible in advance of final judgment, is plainly inappropriate unless the undisputed facts are such that a trial is a futility [citing case]. If there are motives to be probed and opposing equities to be weighed, there must be the searching scrutiny of a trial and the sanction of a judgment."

Moreover a decree granting injunctive relief, whether temporary or permanent, "must define specifically what the enjoined person must or must not do, in language so clear and

explicit that a layman can understand what he is expected to do, or refrain from doing, without placing the one enjoined in the position of acting at his peril. Stated otherwise, an injunction should plainly indicate to the defendant specifically all the acts which he is thereby restrained from doing without calling upon him for inferences, or any conclusions only to be arrived at by a more or less uncertain process of reasoning, and about which the parties might well differ in opinion either as to facts or law.'' (28 N. Y. Jur., Injunctions, § 147.) (See, also, *May's Furs & Ready-to-Wear* v. *Bauer,* 282 N. Y. 331, 343; *Earl* v. *Brewer,* 248 App. Div. 314, 315, affd. 273 N. Y. 669.)

The portion of the order under consideration restrains Neises from being employed by Dennison (and the latter from employing the former) '' in the field of xerography.'' In the light of the facts this is issue-begging language that if left undisturbed doubtless would promptly erupt in the form of a motion by Xerox to punish for contempt at the hearing of which the basic and now obvious issues would have to be decided.

The welter of affidavits and other material in the record present a sharp factual issue as to whether or not Neises is presently, directly or indirectly, engaged or employed in '' xerography.'' Neises contends that he has had no training or experience in the technical scientific field in the art of xerography; that his work for plaintiff was in the financial and management area. Xerox, on the other hand, claims that the agreement should be literally construed; that pursuant thereto Neises is barred from working in '' xerography '' (presumably any place in the world) for anyone for the stated period of two years from the date of termination of his employment.

A trial will elicit facts, as distinguished from the contentious generalities presented in the affidavits of both parties, so that a proper determination may be made as to the intent of the parties when Neises executed the agreement and, more important, the precise nature of Neises' employment from 1966 to 1968 with plaintiff and now with Dennison. Moreover, disposition may also be made of appellants' contention that if the covenant is to be construed as claimed by Xerox, it is unreasonable and unenforcible.

The guidelines in deciding this last issue have been restated in *Purchasing Assoc.* v. *Weitz* (13 N Y 2d 267, 272): '' Thus, a covenant by which an employee simply agrees, as a condition of his employment, not to compete with his employer after they have severed relations is not only subject to the overriding limitation of ' reasonableness ' but is enforced only to the extent

necessary to prevent the employee's use or disclosure of his former employer's trade secrets, processes or formulæ [citing cases] or his solicitation of, or disclosure of any information concerning, the other's customers. [Citing cases.] "

Concluding, as we do, that temporary restraint was too broadly fashioned we also recognize that for several reasons, including the two-year period stated in the writing, there should be a prompt trial. The order entered September 11, 1968 should be modified on the law and on the facts to strike subdivisions " a " in the second and third ordering paragraphs thereof and to provide for a trial of the issues at the January 1969 Term of Supreme Court, New York County, and otherwise the order should be affirmed, without costs or disbursements.

MCNALLY, J. (dissenting). I would affirm. Paragraph (B) of Neises' agreement with Xerox provided that for two years after the termination of his employment with Xerox, he would " not independently engage in xerography or, directly or indirectly, serve or advise in xerography or be employed in xerography by any individual, firm or corporation."

The issue presented is whether the defendant, president of Dennison's Copier Division, which is its xerographic division, is directly or indirectly serving, advising or employed in xerography. Xerography is defined in paragraph (E) as " the art of forming and utilizing an electrostatic charge pattern to make visible images ". Since the Copier Division is engaged in xerography, it would seem to me that defendant as president and general manager and head of Dennison's Copier Division is engaged in xerography. The contract, however, is not limited to engaging directly in xerography. It provides the defendant cannot engage in xerography or directly or indirectly serve or advise in xerography or be employed in xerography.

The injunction does not deprive defendant of his right to make a living. He is free to take any employment not in violation of the reasonable terms of the agreement. The temporary injunction does not prohibit him from working for Dennison; it merely prohibits him during the pendency of the action from being engaged in or employed in xerography. The injunction only restrains defendant in accordance with his agreement. Consequently, I would affirm the order appealed from.

EAGER, J. P., and STEUER, J., concur with BASTOW, J.; MCNALLY, J., dissents in opinion in which RABIN, J., concurs.

Order entered September 11, 1968, modified, on the law and on the facts, to strike subdivisions " a " in the second and third

ordering paragraphs thereof and to provide for a trial of the issues at the January 1969 Term of the Supreme Court, New York County, and, as so modified, affirmed, without costs or disbursements.