**CARVEL CORPORATION, Plaintiff,**

v.

**Barry EISENBERG and Linda Eisenberg, formerly d/b/a Carvel Store No. 1229, Defendant.**

**No. 87 Civ. 608 (CSH).**

United States District Court, S.D. New York.

July 6, 1988.

Carvel Corporation Legal Dept., Yonkers, N.Y., for Carvel Corp.; Eric B. Kaviar, Richard G. Cirino, of counsel.

Nims, Howes, Collison & Isner, New York City, for defendant; Margaret Ranft, Kevin Parks, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

The defendants operated a Carvel ice cream store in Dade County, Florida, under a license agreement that expired on October 31, 1986. Although the defendants did not renew the agreement, it is undisputed that they continued to operate a retail ice cream store after that date, selling ice cream and frozen deserts that are not Carvel products, at the same location.[1]

The complaint alleges breach of contract by the Eisenbergs. The case is before the Court on plaintiff's motion for partial summary judgment pursuant to Fed.R.Civ.P. 56.

The court's responsibility in considering a motion for summary judgment under Rule 56 is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citations omitted). The mere existence of factual disputes will not suffice to defeat a motion for summary judgment unless the disputed issues are material to the claims or defenses asserted in the action. *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) (per curiam). Materiality is determined according to the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party

1. The defendants removed this case from state court to this court based upon diversity jurisdiction. The plaintiff, Carvel Corporation is a De- laware corporation with its principal place of business in New York. The defendants, Barry and Linda Eisenberg, are residents of Florida.

against whom summary judgment is sought may not rest upon allegation, speculation, or conjecture to defeat the motion, but must instead provide "concrete particulars showing that a trial is needed." *R. G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

The contract at issue contains the following paragraph ("THIRTY FIRST"), which is the center of the dispute:

> To prevent dilution of the exclusivity of the valuable Carvel know-how and Carvel trade secrets to be acquired by Licensee hereunder, it is agreed as part of the consideration to, and inducement for, Licensor entering into this Agreement, that in the event Licensee sells the Carvel Store or abandons the Carvel Store provided in this License, or in the event this License is *terminated for any reason* except for Licensor's breach, then for a period of three (3) years next following such event Licensee shall not directly or indirectly engage in whole or in part in the production, distribution or sale of ice cream or other frozen deserts whether as proprietor, employee, officer, director, agent, joint venturer, partner or other capacity whatsoever, within a radius of two (2) miles of the site of the within Carvel Store. The provisions of this paragraph shall survive *termination,* abandonment or other cancellation of the Agreement. (emphasis added)

Carvel contends that Paragraph THIRTY FIRST (the "restrictive covenant") applies to the defendants, and seeks a permanent injunction against the defendants pursuant to the terms of the paragraph.

The defendants contend that Paragraph THIRTY FIRST does not apply to them because their license "expired" instead of "terminated". The defendants further argue that the restrictive covenant is unenforceable against them because it violates Section 340 of the New York General Business Law.

*Discussion*

■ Where subject matter jurisdiction is founded on diversity of citizenship, the court must follow the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). "Under New York law, great deference is to be given a contract's designation of the law that is to govern disputes arising from contracts." *Zerman v. Ball,* 735 F.2d 15, 20 (2d Cir.1984). Paragraph TWENTY EIGHTH of the license agreement at issue states that "any and all performance thereunder, or breach thereof shall be interpreted, governed and construed pursuant to the laws of the State of New York." New York law therefore governs this action.

Under New York law, the intent of the parties is determined, where possible, by the plain language of the contract. *Mallad Constr. Corp. v. County Fed. Sav. & Loan Assn.,* 32 N.Y.2d 285, 344 N.Y.S.2d 925, 930, 298 N.E.2d 96, 99 (1973). In interpreting a contract

> [t]he court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby.

*Atwater & Co. v. Panama R.R. Co.,* 246 N.Y. 519, 524, 159 N.E. 418 (1927).

It is the court's responsibility to determine if the language of the contract is ambiguous. If it is not, extrinsic evidence is inadmissible to explain or vary the terms of the agreement. *Mallad Constr. Corp., supra,* 344 N.Y.S.2d at 930, 298 N.E.2d at 99; *Rentways, Inc. v. O'Neill Milk & Cream Co.,* 308 N.Y. 342, 349, 126 N.E.2d 271 (1955).

Upon reviewing the license agreement in its entirety, with the foregoing principles in mind, it is clear that the parties intended the agreement to apply in the event of termination by expiration as well as by any other form of termination.

In reaching this conclusion, I am in accord with the New York court which has considered the same question regarding the

identical restrictive covenant. *Carvel Corp. v. Rait*, 117 A.D.2d 485, 503 N.Y. S.2d 406 (2nd Dept.1986). The Second Department said:

"It is true, as the defendant notes, that the words 'termination' and 'expiration', or forms thereof, appear in several contexts throughout the agreement. For example, Carvel was entitled to terminate its licensee's rights under the contract in the event of a breach by the latter. Also, the contract expressly provided that in the event of 'expiration, cancellation or termination', Carvel was entitled to immediate possession of its property and prompt payment by the licensee of all open accounts. In these contexts, it might be argued that the use of the word 'termination' was intended to describe an end of the agreement's existence occurring prior to the time fixed by the parties at its inception. However, another clause of the agreement provided that the licensee was to discontinue use of the Carvel name, trademarks and know-how upon 'expiration or any earlier termination' of the agreement, and it can be inferred from these words that the parties understood 'expiration' to be but a form of 'termination.' In the covenant not to compete, the stated purpose of which was to 'prevent dilution of the exclusivity of the valuable Carvel know-how and Carvel secrets to be acquired,' the licensee agreed to refrain from competing with the prescribed geographical area for a period of three years after the 'license is terminated for any reason except for Licensor's breach', and the covenant was to survive 'termination, abandonment or other cancellation' of the agreement. The foregoing language evinces an understanding by the parties that the covenant would apply in the event of any termination of their agreement (other than one brought about by Carvel's breach). The parties further understood that the language was to include the expiration of the agreement at the end of its stated term. Indeed, as noted by Special Term, Webster's New Collegiate Dictionary (1974), defines the word 'expiration', in part, as a 'termination'. Moreover, bearing in mind that we must seek to construe the words utilized by the parties so as to effectuate their probable intent, we find, as did Special Term, that this interpretation is consistent with the purpose of the covenant and other provisions of the agreement: to protect Carvel's name, know-how and trade secrets once its relationship with its licensee had been severed. We can perceive no basis for concluding that the parties intended to provide Carvel with less protection from competition or dilution of its name in the event of expiration than in the event of some earlier termination of the license agreement.

*Carvel v. Rait, supra*, 503 N.Y.S.2d at 410. By continuing to operate the ice cream store at the same location after the expiration of their contract, the defendants in the instant action, are in violation of the restrictive covenant in their contract.

The question of unconscionability is a matter of law amenable to decision by the court on a motion for summary judgment. As stated in *Wilson Trading Co. v. Ferguson, LTD*, 23 N.Y.2d 398, 297 N.Y.S.2d 108, 244 N.E.2d 685 (1968): "Whether a contract or any clause of the contract is unconscionable is a matter for the court to decide against the background of the contract's commercial setting, purpose and effect, and the existence of this issue would not therefore bar summary judgment." *Id* at 403–404, 297 N.Y.S.2d 108, 244 N.E.2d 685.

The defendants contend that the restrictive covenant is unenforceable because it is unreasonable and violates N.Y. G.B.L. § 340 ("the Donnelly Act"), and the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq*. Not all restrictive covenants are a "per se violation of the Sherman Act or the Donnelly Act." *Bradford v. N.Y. Times*, 501 F.2d 51, 59 (2d Cir.1974); *People Savings Bank of Yonkers, N.Y. v. County Dollar Corp.*, 43 A.D.2d 327, 351 N.Y.S.2d 157, 161 (2nd Dept.1974). Under both acts, restrictive covenants are valid if they are reasonably related to legitimate interests of one of the parties. This test is known as the "rule of reason" approach. *People Savings Bank, supra*, 351 N.Y.S.2d at 161;

*U.S. v. Addyston Pipe & Steel Co.*, 85 F. 271 (6th Cir.1898), *aff'd*, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899).

Courts have recognized the validity of restrictive covenants in employee and franchisee contracts. *Xerox Co. v. Neises*, 31 A.D.2d 195, 295 N.Y.S.2d 717, 721 (1st Dept.1968) (two year, entire trade restriction), *Cater Cart Corp. v. Cohan*, 231 N.Y. S.2d 192, 194, 35 Misc.2d 702 (Sup.Ct. Queens 1962) (18 month, previous route restriction), *Rudiger v. Kenyon*, 32 Misc.2d 804, 224 N.Y.S.2d 545, 548 (Sup.Ct. Monroe 1962) (one year, 100 mile restriction), *Scadron's Sons Inc. v. Susskind*, 132 Misc. 406, 229 N.Y.S. 209, 210 (Sup.Ct. Westchester 1928) (three and one half year, three mile restriction), *Eastman Kodak Co. v. Powers Film Products Inc.*, 189 A.D. 556, 179 N.Y.S. 325, 330 (4th Dept. 1919) (two year, entire U.S. restriction), *See also, Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 351 A.2d 207, 211 (1976) (three year, thirty mile restriction), and *Shakey's Inc. v. Martin*, 91 Idaho 758, 430 P.2d 504, 509 (1967) (one year, thirty mile restriction). In upholding the restrictive covenants the courts have recognized a franchisor's valid interest in its "know-how" and "trade secrets." *Xerox, supra*, 295 N.Y.S.2d at 721; *Kodak, supra*, 179 N.Y.S. at 330, and in their ability to secure another franchise in the territory, *Rudiger, supra*, 224 N.Y.S.2d at 548. *See also, Piercing Pagoda, supra*, 351 A.2d at 212, *Shakey's, supra*, 430 P.2d at 509.

Employee restrictive covenants have been allowed if they "serve legitimate business purposes." *Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1082 (2d Cir. 1977), *cert. den.*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). For a restrictive covenant to be unconscionable, it must be unconscionable with respect to 1) "geographic scope" and 2) temporal "duration." *Mohawk Maintenance Co., Inc. v. Kessler*, 52 N.Y.2d 276, 437 N.Y.S.2d 646, 650, 419 N.E.2d 324, 328 (1981). There must also be a showing of a lack of meaningful choice in the transaction on the part of one of the parties. *State of New York v. Avco Financial Service of N.Y. Inc., Etc.*, 50 N.Y. 2d 383, 429 N.Y.S.2d 181, 185, 406 N.E.2d 1075, 1079 (1980). However, superior bargaining power on the part of the plaintiffs standing alone is not enough to prove unconscionability. Absence of a meaningful choice must be accompanied by "contract terms which unreasonably favor the other party." *Fleischmann Distilling Corp. v. Distillers Co. Ltd.*, 395 F.Supp. 221, 232 (S.D.N.Y.1975).

The restrictive covenant in the Eisenberg's franchise agreement is not unreasonable in length or geographic restrictions. These restrictions, limiting the defendants' ability to operate an ice cream store within two miles of their present location for three years, are reasonably related to Carvel's interest in protecting its know-how and to its ability to install another franchise in the same territory. The covenant therefore does violate the Donnelly Act or the Sherman Act.

### Conclusion

Plaintiff's motion for summary judgement is granted.

Plaintiff is directed to settle an order of permanent injunction on five (5) days notice.

The parties are directed to make a good faith effort to settle the remaining aspects of the action, failing which they are to appear at a status conference at 3:00 p.m. on September 30, 1988 in courtroom 307.