## Mugrabi v Empire Chesapeake Holdings, LLC

2024 NY Slip Op 34015(U)

November 12, 2024

Supreme Court, New York County

Docket Number: Index No. 655627/2024

Judge: Lyle E. Frank

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. LYLE E. FRANK

_Justice_

PART     11M

----------------------------------------------------------------------X

LIBBIE MUGRABI, MOO MOO ENTERPRISES, LLC,

Plaintiff,

- v -

EMPIRE CHESAPEAKE HOLDINGS, LLC,IAN PECK, ART
CAPITAL GROUP, LLC,TERENCE DORAN

Defendant.

----------------------------------------------------------------------X

INDEX NO.     655627/2024

MOTION DATE     10/27/2024

MOTION SEQ. NO.     001

## DECISION + ORDER ON MOTION

The following e-filed documents, listed by NYSCEF document number (Motion 001) 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 35

were read on this motion to/for     DISCHARGE                          .

Upon the foregoing documents, plaintiffs' motion is denied.

## Background

This matter arises out of a dispute over fine art and financial loans. Plaintiff Elizabeth

Mugrabi ("Libbie"), along with her company plaintiff Moo Moo Enterprises, LLC ("Moo Moo",

collectively with Libbie "Plaintiffs") approached defendants Art Capital Group, LLC ("ACG")

and Empire Chesapeake Holdings, LLC ("Empire", together with ACG, defendant Terence

Doran, and defendant Ian Peck, the "Defendants") concerning a loan that ultimately never went

through. This loan was to be secured with the Jean-Michel Basquiat painting _Untitled, 1982_ (the

"Basquiat"), and Defendants accordingly entered into a Secured Term Loan Term Sheet in

October of 2023 (the "Term Sheet Agreement"). This Term Sheet Agreement listed the Basquiat

as collateral and stated that Plaintiffs would be responsible for certain fees and expenses,

regardless of whether the loan ultimately closed or not.

**655627/2024  MUGRABI, LIBBIE ET AL vs. EMPIRE CHESAPEAKE HOLDINGS, LLC ET AL**
**Motion No. 001**

**Page 1 of 7**

According to Defendants, Plaintiffs were unable to pay the required initial $12,500 due diligence fee in cash, and so the parties entered into a second agreement. This was a Supplemental Security Agreement dated November of 2023 (the "Supplemental Security Agreement"). The parties differ in how they interpret the role and interpretation of the Supplemental Security Agreement. Defendants' position is that this agreement pledged a second painting, Andy Warhol's *Jackie, 1964* (the "Warhol") as a second collateral and security for Plaintiffs' obligation to pay certain fees and expenses under the Term Sheet Agreement, including the $12,500 due diligence fee. But Plaintiffs argue that the Supplemental Security Agreement instead *substituted* the Warhol for the Basquiat as collateral for the underlying obligations. Relations between the parties quickly broke down and there followed a bitter and often public dispute over the ownership of the two paintings and the validity of any liens on or security interest in the paintings.

Plaintiffs brought the underlying suit in which they ask for a judgment and order that would remove the UCC lien that Defendants placed on the Basquiat and grant Plaintiffs damages. Plaintiffs also bring the present motion, an emergency order to show cause, which asks the Court to remove the UCC filing lien placed on the Basquiat and for damages. Defendants oppose and have brought a separate suit (*Art Capital Group v. Libbie Mugrabi*) where they request a declaratory judgment validating the secured interest in the Basquiat and enjoining Plaintiffs from transferring the painting.

**Standard of Review**

A preliminary injunction is an "extraordinary provisional remedy" that will only be granted when the "proponent demonstrates (1) a likelihood of success on the merits, (2)

**655627/2024   MUGRABI, LIBBIE ET AL vs. EMPIRE CHESAPEAKE HOLDINGS, LLC ET AL**          **Page 2 of 7**
Motion No.  001

2 of 7

irreparable injury absent a preliminary injunction, and (3) a balance of equities tipping in its favor." *Harris v. Patients Med., P.C.*, 169 A.D.3d 433, 434 (1st Dept. 2019).

## Discussion

The initial matter that must be addressed here is the fact that the request for preliminary injunction asks for the same ultimate relief as the complaint. In their complaint, Plaintiffs plead a single cause of action, that "the UCC-1 financing statement(s) must be canceled and Plaintiffs should be awarded damages." Their prayer for relief requests "a judgment and order directing the cancellation and termination of the UCC-1 Financing Statement which was filed by the Defendants" and a monetary judgment for damages, the same two things that the preliminary injunction motion asks for. Therefore, the granting of the requested preliminary injunction functions as an ultimate decision on the merits.

Generally, it is improper to grant a preliminary injunction that functionally operates as a final adjudication on the merits. *See, e.g., Booston LLC v. 35 W. Realty Co. LLC*, 194 A.D.3d 609, 609 (1st Dept. 2021). Such an injunction "should not be granted, absent extraordinary circumstances, where the status quo would be disturbed and the plaintiff would receive the ultimate relief sough, pendente lite." *St. Paul Fire & Marine Ins. Co. v. York Claims Serv.*, 308 A.D.2d 347, 349 (1st Dept. 2003). A preliminary injunction which does "in effect determine the litigation and give the same relief which is expected to be obtained by the final judgment, if granted at all, are granted with great caution and only when required by imperative, urgent, or grave necessity, and upon clearest evidence, as where undisputed facts are such that without an injunction order a trial will be futile." *Xerox Corp. v. Neises*, 31 A.D.2d 195, 197 (1st Dept. 1968). Therefore, in order to grant the requested preliminary injunction, there would need to be

**655627/2024   MUGRABI, LIBBIE ET AL vs. EMPIRE CHESAPEAKE HOLDINGS, LLC ET AL**   **Page 3 of 7**
**Motion No.  001**

3 of 7

an "imperative, urgent, or grave necessity" and the undisputed facts in the case must show that a trial on the merits would be futile.

There is such an urgent necessity here. Libbie claims in her sworn affidavit to be at risk of foreclosure on her personal residence and therefore she wants to sell the Basquiat at an auction scheduled for November 19, 2024. According to her, the next opportunity to sell the Basquiat would not take place until after the foreclosure would have been effectuated. Libbie also swears in her affidavit to being willing to pay the $97,000.00 that Defendants allege are the fees due to them that have been secured by the Basquiat. Therefore, the question becomes whether the undisputed facts in this case are such that a trial on the merits would be futile.

Libbie alleges in her affidavit that she never granted Defendants permission to file a UCC lien on the Basquiat. The Term Sheet Agreement, however, grants Defendants a "first-priority perfected security interest in all assets listed on Exhibit A, or as agreed by the parties." The Basquiat is the only collateral listed on Exhibit A. Therefore, the Term Sheet Agreement does grant the right to file a UCC-1 lien on the listed collateral. Defendants argue that the Court does not have the power to remove a UCC-1 lien. This is also incorrect. According to the NY UCC § 9-625(a), a court may "order or restrain collection, enforcement, or disposition of collateral." Courts have interpreted this provision as authorizing them, in certain circumstances, to halt a sale pending determination of the validity of a UCC-1 lien. *See Bonito v. Empire Chesapeake Holdings LLC*, 2022 NYLJ LEXIS 90, *8-9 (Sup. Ct. New York County Jan. 26, 2022).

The question then becomes whether the Supplemental Security Agreement added the Warhol as additional collateral for Plaintiffs' obligations under the Term Sheet Agreement, or if it substituted the Warhol for the Basquiat. Furthermore, given the standard for the motion for injunctive relief, for Plaintiff to succeed in their request the undisputed facts must show that

there is no question that the Warhol was a substitute and not an addition, to the extent that any trial on the merits would be futile. In support of this contention, Plaintiffs point to the language in Paragraph 3 of the Supplemental Security Agreement, stating that they grant Defendants a lien and security interest in the Warhol "to secure the performance and payment of the Obligations" under the Term Sheet Agreement. They also argue that an emailed Notice of Default from one of Defendant's attorneys, Francis B. Majorie, is further proof that the Warhol was a substitute for the Basquiat and not an addition. In that email, Attorney Majorie states that Plaintiff was "in breach and default of the Term Sheet and the Supplemental Agreement", and that:

> "[b]oth the Term Sheet and the Supplemental Agreement grant to Empire and Art Capital a first-priority perfected security interest and lien in the following collateral (the "Collateral): that certain acrylic and silkscreen ink on canvas painting by Andy Warhol (1928-1987) entitled "Jackie" executed in 1964, 20 by 16 inches, together with all proceeds resulting from the sale, lease, or disposition of the foregoing."

Defendants counter by arguing that the Warhol was pledged because Plaintiff claimed that she could not pay the out-of-pocket cost for the due diligence fees. Defendant Ian Peck claims in his sworn affidavit that the Warhol was a "solution, in order to secure [Defendants] for their fees and costs in connection with the Term Sheet Agreement." Defendants point to the language in the Supplemental Security Agreement that states that the Term Sheet Agreement "remains in full force and effect" as evidence that the Warhol was meant to be *additional* collateral, not a substitute.

Regarding the Marjorie email, that notice of default states at the end that "[t]he listing of defaults in this letter does not preclude [Defendants] from declaring others." Therefore, the email is not a conclusive statement that there is no retained security interest in the Basquiat. The Term Sheet Agreement states in the paragraph titled "Fees and Expenses" that the fees and expenses due (as secured by the collateral), includes "all reasonable Legal fees and costs to enforce this

**655627/2024   MUGRABI, LIBBIE ET AL vs. EMPIRE CHESAPEAKE HOLDINGS, LLC ET AL**          **Page 5 of 7**
**Motion No.  001**

5 of 7

agreement", as well as costs and expenses incurred by the inspection of the collateral, "storage facilities, appraisers, specialty insurance", and others. In another provision, the agreement states that Plaintiff "agrees to pay on demand all costs, fees, and expenses incurred or to be incurred by Arranger or Lender in connection with the consideration, examination, review, documentations, syndication and/or closing of the Loan, including but not limited to reasonable counsel fees, appraisers' fees, and all other out-of-pocket expenses relating to any of the foregoing." After the various provisions of the agreement are listed, the document ends by stating "If you would like to accept this letter agreement and for us to proceed with our due diligence, appraisal and legal documentation process please sign and return the enclosed copy of this letter together with a wire transfer, for $12,500." It is this amount that Defendants claim the Warhol was pledged to cover as Plaintiff was unable to pay out of pocket.

Clearly, the $12,500 due diligence fee was not the total amount of the potential fees and expenses due under the Term Sheet Agreement, nor was it the sole amount that was secured by the Basquiat under that agreement. The opening of the Supplemental Security Agreements states that the Plaintiff "has requested that the work fee deposit and related expenses be satisfied by the pledge of the artwork named herein, which will secure these obligations" and the agreement further states that this statement is "contractual and not [a] mere recital[]." Under the facts listed above, it cannot be conclusively said that there is no dispute as to whether the Warhol was a substitute for all of Plaintiff's obligations under the Term Sheet Agreement, or an additional collateral pledged as a result of inability to pay the initial $12,500 work fee. While the Court is sensitive to the urgency of the pending foreclosure and recognizes that Plaintiff does have a grave necessity to secure funding, the extraordinary circumstances requirement has not been met in order to grant a preliminary injunction that operates as a final adjudication. While it is possible

655627/2024   MUGRABI, LIBBIE ET AL vs. EMPIRE CHESAPEAKE HOLDINGS, LLC ET AL          Page 6 of 7
Motion No.  001

[* 6]                                                            6 of 7

that ultimately Plaintiffs will succeed on the merits of this case, they have not established to a

certainty that any further trial would be futile. Accordingly, it is hereby

ADJUDGED that the plaintiff's motion is denied.

20241112113323LFRANKA8D1D913C61447A78B465CBC14A2FA3E

**11/12/2024**
DATE

LYLE E. FRANK, J.S.C.

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**655627/2024 MUGRABI, LIBBIE ET AL vs. EMPIRE CHESAPEAKE HOLDINGS, LLC ET AL**
**Motion No. 001**

Page 7 of 7

7 of 7

[* 7]