**NORWALK CORE et al. (Frank Williams and Ethel Williams), Plaintiffs-Appellants,**

v.

**DAVID KATZ & SONS, INC., et al. (Robert A. Katz, Abraham A. Rosen d/b/a Carlton Court Apartments), Defendants-Appellees,**

and

**Norwalk Redevelopment Agency et al., Defendants.**

Nos. 462, 463, Docket 33124, 33125.

United States Court of Appeals Second Circuit.

Argued April 9, 1969.

Decided May 6, 1969.

Jonathan W. Lubell, New York City (Lubel & Lubell, Stephen L. Fine, New York City, on the brief), for plaintiffs-appellants.

Robert A. Slavitt, Norwalk, Conn. (Slavitt & Connery, Norwalk, Conn., on the brief), for defendants-appellees.

Before KAUFMAN, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiffs Frank and Ethel Williams appeal from an order of the United States District Court for the District of Connecticut, M. Joseph Blumenfeld, J., which denied plaintiffs' motion for a preliminary injunction restraining their landlord from evicting them for nonpayment of rent. Plaintiffs' appeal raises only the question, as they put it, of "what constitutes a 'family' for purposes of determining adequacy of rental charged for relocation housing in the urban renewal context." Since we agree with Judge Blumenfeld's resolution of that issue, we affirm.

The controversy is an offshoot of a broader litigation, aspects of which came before us in Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968). In that case, the Norwalk Chapter of CORE, two tenants' associations of low-income Negroes and Puerto Ricans, and various individuals representing non-white tenants displaced by an urban renewal project brought a class action against the Norwalk Redevelopment Agency and others which claimed that the administration of a relocation program in Norwalk, Connecticut was unconstitutional because racially discriminatory and was also improper under 42 U.S.C. § 1455(c). We held that at least the individuals had standing to sue and left open the status of the association plaintiffs. *Id.* at 937–938. Plaintiffs Frank and Ethel Williams began these proceedings as members of a class represented in that main action. In May 1965, while occupying an apartment within the area of an Urban Renewal Project in Norwalk, paying rent of about $75 a month, they were notified of the need to move because the building in which they lived was to be demolished as part of the Project. At that time, Mrs. Williams' daughter-in-law, Darlene Davis, and Darlene's baby were living with Mr. and Mrs. Williams, but James Davis, Mrs. Williams' son and Darlene's husband, was in the Army. In the following month, plaintiff Frank Williams applied for low-income public housing, stating that the persons to reside in the dwelling were Frank and Ethel Williams, Darlene and James Davis, and their child. The application was denied on the ground that the income of the family exceeded the maximum allowed. Thereafter, plaintiffs continued to seek the assistance of the Norwalk Redevelopment Agency in obtaining other adequate housing which they could afford. At all times in this period, plaintiffs made clear that the Davises were living with them and wanted to continue to do so.

Appellants were referred to defendant David Katz & Sons, Inc. by the relocation office of the Norwalk Redevelopment Agency. Katz & Sons managed a privately-owned apartment complex known as Carlton Court and was also the "preferred sponsor" of the Urban Renewal Project. Carlton Court was owned and operated by defendants Robert Katz and Abraham A. Rosen. Eventually, Katz & Sons placed appellants into Carlton Court under a lease which stated, among other things, that the monthly rent of $130 was a rate which had been reduced because Katz & Sons had been named the Project's preferred sponsor. Katz & Sons itself paid the difference between the regular and reduced rent to the owners of Carlton Court.

In January 1966, James Davis was discharged from the Army and moved in with his wife and the Williamses. In February 1966, the Williamses and the

Davises were relocated into the new apartment. In the same month Frank Williams notified the Redevelopment Agency that he was satisfied with the move and did not desire any further assistance for relocation. For about two years, the rent was paid without difficulty and without complaint until early 1968 when James and Darlene Davis moved into an apartment of their own and stopped contributing to the payment of the rent. In March 1968, defendant Robert Katz instituted a summary proceeding in the Circuit Court of Connecticut against plaintiffs for nonpayment of rent. A judgment in favor of Robert Katz for immediate possession was filed in August 1968. Plaintiffs applied to the court below for a preliminary injunction against the threatened eviction. Judge Blumenfeld issued a temporary restraining order upon the agreement of the parties and held a hearing on the application for a preliminary injunction in October 1968. In November, he filed a thorough twelve-page opinion, denying a preliminary injunction and dissolving the temporary restraining order. The basis of his decision was that plaintiffs did not have a reasonable probability of succeeding at trial. Until determination of this appeal, however, eviction of plaintiffs has been stayed on the condition that the $130 monthly rent be paid.

The theory of plaintiffs' case is that, as relocated tenants, they cannot be evicted because the rent charged them under the lease exceeds twenty per cent of their income and is therefore too high. The legal basis for plaintiffs' position is found in section 105(c) of the Housing Acts of 1949 and 1954, as amended 42 U.S.C. § 1455(c), and regulations issued thereunder. The statute provides that contracts for loans and capital grants may be made by the appropriate federal agency—formerly the Housing and Home Financing Agency, now the Department of Housing and Ur-

ban Development—to a local redevelopment agency only if the contracts require that:

> There shall be a feasible method for the temporary relocation of * * * families displaced from the urban renewal area * * * at rents * * * within the financial means of the * * * families displaced * * *.

The regulations provide that the standards for "ability of displacees to pay" are to be expressed "in terms of gross rent as a percentage of income." It is agreed by the parties that the percentage used in the Norwalk Project is twenty per cent of the family income.[1] Plaintiffs' legal position is that the rent of $130 per month far exceeded this percentage of the family income of Frank and Ethel Williams when they were relocated in February 1966, and was therefore improper. Defendants rejoin that the "family" for this purpose embraced the Davises, and with their income included the rent was perfectly proper. Judge Blumenfeld ruled that on the facts as he found them the propriety of the rent depended upon whether the Davis income was attributable to the family. Since he held that it was, he concluded that plaintiffs could not succeed in their legal theory and denied the injunction. The judge also noted that there was some question whether defendant Katz & Sons, as preferred sponsor, had legal responsibility for the relocation of displacees from the Norwalk Project. However, the judge did not base the denial of the injunction on that ground.

On this appeal, we do not understand that plaintiffs attack the judge's factual findings as to the income of the Williamses and the Davises at various times. But even if plaintiffs do question the findings, we would not overturn them because they are not clearly erro-

---

1. The relevant regulations have been changed but are still substantially those formerly in effect. Compare HHFA, Ur- ban Renewal Manual §§ 16–1, 16–2–1 and HUD, Urban Renewal Handbook RHA 7212.1 (1968).

neous. It is apparent, therefore, that while the impact of urban renewal on family displacement raises a host of problems,[2] the question before us is narrow: What is the proper definition of family in this context? Unfortunately, neither the statute nor the regulations appear to define the term. The parties have offered us competing versions of the meaning of "family," drawing liberally upon policy arguments or state decisions in other situations of varying degree of similarity. E. g., State Farm Mutual Automobile Insurance Co. v. Pennington, 215 F.Supp. 784 (E.D. Ark.), aff'd, 324 F.2d 340 (8th Cir. 1963) (automobile liability insurance policy); Grant-Morris Management Corp. v. Weaver, 6 A.D.2d 687, 174 N.Y. S.2d 759 (1958) (rent control statute); Anchor Finance Corp. v. Miller, 8 Ill. App.2d 326, 132 N.E.2d 81 (1956) (service of process). However, we think it unnecessary to engage in an analysis of those cases. The determining facts for us are the conduct and representations of the Williamses and the Davises. They resided together as a unit for a considerable period of time before the relocation and for about two years thereafter. Frank and Ethel Williams consistently took the position with the public housing authorities that the family unit included the Davises. Indeed, it was because the Davis income was part of the "family" income that plaintiff Frank Williams' application for low-cost housing was rejected. Moreover, it was because space was needed for Darlene Davis and her child that the Williamses sought and received as large an apartment as they did. Plaintiffs now claim that the Davises were, in effect, "boarders," so that only their net contribution to the Williams' budget, rather than their income, should be considered income of the Williams "family." Apart from the very real possibility that on that theory plaintiffs would not have received the apartment they did, the evidence before Judge Blumenfeld justified his finding that the group constituted themselves as a family. In short, we conclude that when plaintiffs were relocated in February 1966, the Williams family income included the earnings of the Davises so that the $130 rent was proper.

The real grievance of plaintiffs Frank and Ethel Williams is that their family group has changed and, therefore, the income of the family is now different. But variations in family income can occur for a variety of reasons. Jobs change or are lost, children move in or out, sickness and death are too much with us—the chances that cause major change in family circumstances are legion. We do not believe, however, that they require cancellation or alteration of a lease obligation entirely proper when made. It is not sensible to hold that the Williamses are now entitled to remain indefinitely in an apartment larger than they require at a reduced rental. Accordingly, Judge Blumenfeld was correct in ruling that plaintiffs do not have a reasonable probability of success at a trial on their request for a permanent injunction against eviction.

It should be noted that we, like the trial court, do not pass upon the question whether any or all of the private defendants have an obligation to assist in the relocation of tenants in a Project area. Moreover, we express no view as to the dictum of the trial court that, in any event, such an obligation on the public or private defendants could never continue to include a second relocation of a family whose situation has changed, although we note that plaintiffs, because of the Project, were originally required to move from an apartment where they

---

2. See Note, The Federal Courts and Urban Renewal, 69 Colum.L.Rev. 472 (1969); Note, Family Relocation in Urban Renewal, 82 Harv.L.Rev. 864 (1969); Note, Judicial Review of Displacee Relocation in Urban Renewal, 77 Yale L.J. 966 (1968).

paid rent of only $75 a month.[3] We hold only that the judge correctly concluded that the rent on plaintiffs' apartment in Carlton Court was not improper when plaintiffs were relocated.

Order denying preliminary injunction affirmed.

HAYS, Circuit Judge (concurring):

Having dissented in Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968), I now concur, merely remarking that this is the kind of case I had in mind when I said in my dissent in the earlier case: "The Federal courts cannot administer the housing program."

**3.** *Cf.* Note, The Interest in Rootedness: Family Relocation and an Approach to Full Indemnity, 21 Stan.L.Rev. 801, 869–72 (1969).