**SCHNEIDER, HILL & SPANGLER, INC.**

v.

**Kenneth H. B. CUDMORE and Kudmor, Inc.**

**Civ. No. 14123.**

United States District Court,
D. Connecticut.

Jan. 20, 1971.

George Levine, Levine, Katz, Cohn, Goldstein & Epstein, Hartford, Conn., for plaintiff.

Donat C. Marchand, Miles F. Mc-Donald, Jr., Parker, Badger & Fisher, Greenwich, Conn., for defendant.

## RULING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION and DEFENDANTS' MOTION TO DISMISS

BLUMENFELD, District Judge.

### I. Facts

The essential facts of this case are not in dispute. Plaintiff Schneider, Hill & Spangler, Inc. (SHS) is a franchisor engaged in the business of licensing franchisees to use the "services and registered service mark and name [of SHS] in order to build [their] own local business[es] as * * * independent personnel consultant[s] and employee placement specialist[s]."[1] Plaintiff and defendant Kenneth H. B. Cudmore entered into two separate contracts, each entitled "Franchise Agreement," by which defendant purchased SHS franchises in the Stamford and Bridgeport, Connecticut, areas respectively.

Generally, the terms of the franchise agreements called for Cudmore to pay SHS, after the initial capital outlay for acquisition of the franchise, a "royalty" in the amount of 7% of monthly gross receipts, and to comply with certain SHS rules of operation. In return, SHS was to provide an exclusive franchise for the particular geographic area, the right to use its name and mark, the benefits of research and advertising, and some training for the licensee and his employees. Paragraph 9(d) of each agreement provided in part:

> "Licensee * * * covenants and agrees that for a period of two (2) years following the termination of this Agreement he will not engage in any business or activity which is directly or indirectly competitive with

---

1. Plaintiff's complaint append. A at 1 ("Franchise Agreement"). The complaint itself, in paragraph 2, states: "As a part of its business the plaintiff franchisees [sic] licensees to operate personnel and placement services under its name in designated geographic areas."

the business and activities of SHS within twenty miles of the area described above in this Agreement or within twenty miles of the perimeter of any other SHS office or franchise area now or hereafter established by SHS for a period of one year."

Defendant Cudmore operated under the SHS franchises in Stamford and Bridgeport for approximately 2½ years and 9 months respectively. On August 27, 1970, however, he served notice on SHS that he intended to terminate both agreements as of September 30, 1970. Cudmore did in fact terminate as of that date and subsequently commenced to operate a personnel placement service in Stamford under the name Kudmor, Inc., also named as a defendant herein. Plaintiff now sues for breach of both contracts, seeking damages and injunctive relief. The present motion is for a preliminary injunction to restrain defendants from continuing to operate their employment agency business in violation of paragraphs 9(d) of the agreements and to enforce against Cudmore other reporting and payment provisions of the contracts. Defendants move to dismiss the action on the alternative grounds of lack of jurisdiction and failure to state a claim.

*II. Motion to Dismiss*

A. *Jurisdiction*

Plaintiff invokes this court's diversity jurisdiction provided by 28 U.S.C. § 1332(a) (1). Defendants do not dispute diversity of citizenship between the parties but contend that the requisite $10,000 is not in controversy. Plaintiff's complaint contains an allegation of jurisdictional amount and seeks damages of $25,000 on each of two counts. In the course of the complaint, plaintiff claims approximately $2,000 in royalties due for May and June of 1970, as well as an additional unspecified amount for the next three months' royalties for each

franchise. The parties agree that total royalties due as of the date of termination would be in the vicinity of $4,500. Plaintiff also alleges it will be irreparably injured if an injunction does not issue.

█ In determining whether the jurisdictional amount is in controversy, the amount claimed in the complaint controls unless it appears or is shown that the amount stated was not claimed in good faith; and it must appear to a legal certainty that the claim is really for less to justify dismissal. Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961); St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–289, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Deutsch v. Hewes St. Realty Corp., 359 F.2d 96, 99 (2d Cir. 1966). Defendants do not contend that the amount stated in the complaint is not claimed in good faith, but that on the face of the complaint plaintiff has alleged nothing but the loss of about $4,500 in royalties.

█ It does not appear to a legal certainty that plaintiff cannot recover more than $10,000. In a suit for injunctive relief, the amount in controversy is the value of the right to be protected by the injunction. *See* Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U.S. 121, 126, 36 S.Ct. 30, 60 L.Ed. 174 (1915); Burndy Corp. v. Cahill, 196 F.Supp. 619, 622 (D.Minn.1961), rev'd on other grounds, 301 F.2d 448 (8th Cir. 1962). In this case, the right asserted is to be free of defendants' competition in the Bridgeport and Stamford areas for two years.[2] *Cf. id.* Defendants counter that nowhere in the complaint does the plaintiff allege that it is in competition with defendants in those areas. Plaintiff does allege competition, however, albeit only inferentially, in its allegation that the defendants are operating a personnel placement service in Stamford "in violation of Paragraph 9(d) of said

2. But, on the papers presented, the area of competition is left somewhat ambiguous for, as plaintiff acknowledges in its brief (at 3), what it seeks to protect is the "right" to be able to offer the Bridgeport and Stamford franchises to a potential franchisee without defendant

'Franchise Agreement,'" which paragraph prohibits defendants from engaging in business "directly or indirectly competitive with the business and activities of SHS."[3]

■ While, as will appear more fully below, the court entertains considerable doubt that plaintiff can show any injury qua competitor from the defendants' conduct in continuing in the personnel placement business, it does not now appear to a legal certainty that it will be unable to do so. The right to be protected by an injunction might well be as plaintiff alleges, worth in excess of $10,000. Accordingly, the motion to dismiss for lack of jurisdiction is denied.

## B. *Failure to State a Claim*

Defendants also urge dismissal for failure to state a claim upon which relief can be granted. They contend that as a matter of law plaintiff cannot enforce the covenant not to compete because the complaint does not contain an allegation of competition. As noted above, the complaint sufficiently alleges competition, and the court has on file an affidavit from plaintiff's president stating defendants are in competition with plaintiff. Whether plaintiff can establish a factual basis for enforcing the covenant will depend on proof at trial. *See* Western Geophysical Co. v. Bolt Associates, Inc., 305 F.Supp. 1251, 1253 (D.Conn.1969). The motion to dismiss is denied.

## III. *Motion for Preliminary Injunction*

To justify exercise of the court's discretionary power to enter a preliminary injunction, several factors must be taken into account. "It is an extraordinary remedy, to be issued only

reluctantly and where the right to relief is clear." Flood v. Kuhn, 309 F.Supp. 793, 797 (S.D.N.Y.1970). There must be "a clear showing of probable success [at trial] *and* possible irreparable injury." Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969).

Inquiry must first be made into the balance of hardships between the parties. The strength of plaintiff's showing of irreparable injury has an effect upon what degree of certainty of success at trial must be shown to support the injunction. Norwalk CORE v. Norwalk Redevelopment Agency, 296 F. Supp. 456, 459 (D.Conn.1968), aff'd sub nom. Norwalk CORE v. David Katz & Sons, Inc., 410 F.2d 532 (2d Cir. 1969). Thus, if the showing of irreparable injury is inadequate, the moving party "must convince the court with reasonable certainty that it will ultimately succeed." Flood v. Kuhn, *supra*, 309 F.Supp. at 798. If, however, the "balance of hardships tips decidedly toward the party requesting the temporary relief," Dino DeLaurentiis Cinematografica, S.P.A. v. D–150, Inc., 366 F.2d 373, 375 (2d Cir. 1966), that party need only raise "questions going to the merits so serious, substantial, and difficult as to make them a fair ground for litigation and thus for more deliberate investigation." Checker Motors Corp. v. Chrysler Corp., *supra*, 405 F.2d at 323.

This is a case where "the effect of [a preliminary] injunction is prematurely to give the party seeking it a substantial part of the relief sought in the final judgment." Foundry Services, Inc. v. Beneflux Corp., 206 F.2d 214, 216 (2d Cir. 1953). Consequently, plaintiff's burden of showing irreparable injury is

---

being in the same area operating a personnel placement service and using plaintiff's know-how.

3. In support of its motion for a preliminary injunction, plaintiff has submitted the affidavit of its president, Arthur M. Schneider. Mr. Schneider stated under

oath that "if either or both of the defendants continues [sic] to operate a personnel and placement service in Stamford and/or Bridgeport, using the systems and know-how developed by us, such operation will be in competition with us * * *." Affidavit of A. M. Schneider at 3.

especially heavy. *Id. See* Flood v. Kuhn, *supra,* 309 F.Supp. at 798.

From the pleadings and the evidence presented at the hearing on these motions, the court cannot conclude that the balance of hardships tips decidedly in favor of the plaintiff. If plaintiff does not secure this remedial relief, and defendants continue to operate a personnel placement service in Stamford, using methods learned from SHS training, plaintiff may have some added difficulty in finding a new franchisee for that area. In view of the fact, brought out at the hearing, that there are 103 other operators of personnel placement services in the area, however, this possible injury cannot be given much weight. Plaintiff further claims that its entire franchise business, consisting of 37 franchises, would dissipate if defendants are not restrained. Its theory is that if defendant Cudmore may terminate his franchise agreement and immediately commence a personnel placement service in his own name in the same area using techniques learned at SHS, all their other franchisees will do the same thing. The deterrent effect on others not parties to this suit is hardly a proper element in an equity proceeding. Furthermore, not the slightest bit of evidence to support such a contention was offered, and I regard it as too remote and speculative to be weighed in the balance of hardships.

Plaintiff does not dispute defendant Cudmore's right to terminate the contract at any time. It does not claim that any confidential information or trade secrets have been pirated.[4] It does not claim the loss of any good will. Finally, in the absence of anything more than an extremely tenuous showing of activities which may be considered as competitive, it offers nothing to show why any possible injury from being denied interim injunctive relief is not compensable in money damages.

On the other hand, defendant Cudmore, if the injunction were granted, would experience substantial hardship. He would be wholly excluded from the personnel placement business in the Stamford and Bridgeport area for the period of the injunction. The business he has built up, through his own efforts and investments, would obviously suffer. There would be, of course, a consequent loss of profits and good will. Moreover, during the term of the injunction, he would be restricted in his right to make a living, using the best skills available to him. *See* Samuel Stores, Inc. v. Abrams, 94 Conn. 248, 255–256, 108 A. 541 (1919).

Since the balance of hardships does not tip decidedly in plaintiff's favor, his showing of probable success at trial must be particularly strong. *See* H. E. Fletcher Co. v. Rock of Ages Corp., 326 F.2d 13, 17 (2d Cir. 1963); Flood v. Kuhn, *supra,* 309 F.Supp. at 801.

"[W]hile a hearing on a preliminary injunction is not a forum for a full investigation into the merits of the plaintiff['s] claims, if the evidence at the hearing clearly demonstrates the absence of a prospect that the [plaintiff] will eventually succeed at trial, the preliminary injunction should be denied." Norwalk CORE v. Norwalk Redevelopment Agency, *supra,* 296 F. Supp. at 459.

Because this covenant is in restraint of trade, for plaintiff to succeed at trial in this case it must show at least that the covenant is reasonable in scope and that "it is necessary for the proper protection of [plaintiff's] competitive position." De Long Corp. v. Lucas, 176 F.Supp. 104, 121 (S.D.N.Y.1959), aff'd, 278 F.2d 804 (2d Cir.), cert. denied, 364 U.S. 833, 81 S.Ct. 71, 5 L.Ed.2d 58 (1960); Samuel Stores, Inc. v. Abrams, *supra,* 94 Conn. at 255, 108 A. 541. While plaintiff has alleged enough to withstand a motion to dismiss at this

---

4. The crux of plaintiff's claim of injury is that Cudmore is using SHS "know-how" in conducting his business. There is no claim that this know-how is confidential or amounts to a trade secret.

stage, it is apparent that its chances of success at trial are dim.

The burgeoning business of franchise operations has as yet had scant consideration in the courts. This court has found no direct authority, and has been cited to none, resolving the precise issue in this case. However, a recent opinion from the Court of Appeals in this circuit dealing with a franchise operation in the context of alleged antitrust violations is instructive. In Billy Baxter, Inc. v. Coca-Cola Co., 431 F.2d 183 (2d Cir. 1970), the court held that Billy Baxter, Inc., a franchisor of soft drink bottlers, did not have standing to maintain a treble damage antitrust suit for the defendants' alleged use of improper means to persuade retail outlets to buy products other than those sold by its franchisees. The franchisor, the court found, "merely licensed the information needed for the manufacture of the beverages, supplied ingredients which still others had manufactured, and left further production activities to its franchisees." *Id.* at 188. In holding that the franchisor did not allege sufficient causal connection between the interference with the marketing activities of its franchisees and any injury to it as a franchisor, the court stated at 189:

> "An interference with the marketing of beverages may interrupt profitable relationships and thereby harm a party which in effect 'markets' franchises and ingredients, but the connection is not sufficiently compelling to support a treble damage suit."

5. It bears emphasis that this is a covenant not to compete with the franchisor, not a covenant not to engage in the same business as its other franchisees. Only the latter type of covenant was involved in Budget Rent-A-Car Corp. of

This plaintiff is in substantially the same relationship with the defendants as Billy Baxter, Inc. was with its franchisees. The lesson of that case for this one is that the business of issuing franchises must be distinguished from the business conducted pursuant to the franchise issued. It follows that this plaintiff will have substantial difficulty showing it is in a sufficiently competitive position relative to the defendants to enforce a covenant not to compete, and that its chances of doing so are remote.[5] In addition, the likelihood of plaintiff's ultimate success is threatened by the serious doubt as to whether the "know-how" which is the subject matter of the restriction sought in this case[6] is entitled to protection by way of enforcement of a covenant in restraint of trade. *See* Samuel Stores, Inc. v. Abrams, *supra*, 94 Conn. at 255, 108 A. 541; *cf.* United States v. Arnold, Schwinn & Co., 388 U.S. 365, 379–380, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967); Painton & Co. v. Bourns, Inc., 309 F. Supp. 271 (S.D.N.Y.1970). *But see* Budget Rent-A-Car Corp. of America v. Fein, *supra*, 342 F.2d at 517–518; Shakey's, Inc. v. Martin, *supra*, 91 Idaho 758, 430 P.2d 504.

Because plaintiff has not made a clear showing of irreparable damage if a preliminary injunction is not now issued, and because at this point its chances of success at trial appear dim, the motion for a preliminary injunction is denied.

America v. Fein, 342 F.2d 509 (5th Cir. 1965), and in Shakey's, Inc. v. Martin, 91 Idaho 758, 430 P.2d 504 (1967).

6. *See* footnotes 3 and 4, *supra*.