## JOHN LEMMON FILMS, INC., Plaintiff,

v.

## ATLANTIC RELEASING CORP., Atlantic International, Atlantic Television and Atlantic Communications Group, Defendants.

No. C–C–85–479–P.

United States District Court, W.D. North Carolina, Charlotte Division.

Sept. 20, 1985.

W. Thad Adams, III, Charlotte, N.C., for plaintiff.

Richard A. Rosen, Los Angeles, Cal., John Wintrol, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Washington, D.C., John R. Wester, Robinson, Bradshaw & Hinson, Charlotte, N.C., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER was heard before the undersigned on September 9, 1985 at Charlotte, North Carolina upon motion of the Plaintiff for a preliminary injunction pursuant to Fed.R.Civ.P. 65. The Plaintiff seeks to enjoin the Defendants from using in any unauthorized manner the service mark "STAR CHASERS," or any mark or term confusingly similar thereto, in connection with the development, production or distribution of any film, film series, or animation. The Plaintiff was represented by W. Thad Adams, III, Attorney at Law, and the Defendants were represented by John P. Wintrol, Elliott B. Adler, and J. Dickson Phillips, III, Attorneys at Law.

After carefully considering the evidence presented, the legal memoranda and the arguments of counsel, the Court enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

(1) The Plaintiff is a corporation duly organized and existing under the laws of the State of North Carolina with its principal place of business in Charlotte, North Carolina. Its principal business is the production and distribution of films and motion pictures.

(2) The Defendant Atlantic Releasing Corp. is a corporation organized and existing under the laws of the State of Massachusetts with its principal place of business in Los Angeles, California. It is engaged in the domestic distribution of feature-length motion pictures. Of the four named Defendants, only Atlantic Releasing Corp. has had any relation to the acquisition and domestic distribution of "STARCHASER: The Legend of Orin," which is the subject matter of this litigation. The Court will refer to this Defendant only.

(3) In May, 1982 John Lemmon, co-founder of the Plaintiff, began production of the first episode of an anticipated series of "clay-animated" three-dimensional films revolving around the adventures of a group

of three characters who travel in outer space. In September, 1983 Lemmon chose the term "STAR CHASERS" as a designation for the three main characters and the series in general.

(4) In March, 1984 the Plaintiff began a campaign in North Carolina and South Carolina to market "STAR CHASERS." It printed and distributed "STAR CHASERS" T-shirts and hundreds of flyers advertising pre-screenings of "THE STAR CHASERS IN THE TRONTIUM TUSK." Exhibit 175. "The Trontium Tusk" was promoted as the first episode in a series of "STAR CHASERS" adventures.

(5) On July 9, 1984 a partnership and predecessor of the Plaintiff filed a federal service mark application for the "STAR CHASERS" mark. The Plaintiff's screening of "THE STAR CHASERS in the Trontium Tusk" to an audience of two hundred patrons at Charlotte's East Mecklenburg High School on May 18, 1984 was claimed as the "first use" of the mark in interstate commerce in the service mark application. On May 7, 1985 the mark was published in the Official Trademark Gazette of the United States Patent and Trademark Office for opposition. No notice of opposition to the registration of "STAR CHASERS" as a service mark was filed within the required thirty days. A certificate of registration for the mark issued on July 16, 1985.

(6) On or about October 2, 1984 the "Trontium Tusk" episode began its showing on Showtime, a nationwide cable television network, as a nine-minute filler between major features. It was aired once a month on Showtime since October, 1984 but has never been listed in a viewer's guide or program schedule.

(7) The Defendant acquired the rights to distribute the full-length feature film "STARCHASER: The Legend of Orin" in July, 1984. The film is a three-dimensional animated motion picture about space travellers which must be viewed through special "3D" glasses.

(8) On July 31, 1984 the Defendant registered the name "STARCHASER" with the Motion Picture Association of America for objection by anyone in the industry claiming to have a similar title. After receiving two objections (neither being from the Plaintiff), the Defendant amended its registered title to "STARCHASER—3D: The Legend of Orin" on August 13, 1984, and finally to "STARCHASER: The Legend of Orin" in May 1985 to conform to its advertisements.

(9) Upon acquiring the rights to the film, the Defendant developed a promotional campaign for the sale of the motion picture at major film markets throughout the world. The Defendant also ran print advertisements for the film in various publications beginning in October, 1984, and a short film preview consisting of "snatches" of the "STARCHASER" movie in conjunction with another feature-length film released by the Defendant throughout the United States in November, 1984. All of the promotional items for the film prominently have featured the name "STARCHASER: The Legend of Orin."

(10) Plaintiff first learned of the Defendant's use of the mark "STARCHASER" on November 26, 1984; in conjunction with the Defendant's movie "Night of the Comet," Lemmon saw a short advertisement for a three-dimensional science fiction film entitled "STARCHASER: The Legend of Orin." The advertisement stated that the film was scheduled for release in the summer of 1985. Subsequent research by the Plaintiff revealed a similar advertisement in *Weekly Variety* magazine announcing the release of "STARCHASER: The Legend of Orin" in May, 1985.

(11) The Plaintiff's counsel sent the Defendant a letter dated January 10, 1985 stating that "STAR CHASERS" was the service mark of the Plaintiff and that a federal service mark application had been pending for some time. He informed the Defendant that the Plaintiff was in production on a second, full-length episode in the "STAR CHASERS" series. The Plaintiff insisted through its counsel that the Defendant provide written assurances within thirty days that it would cease any use of the title "STAR CHASERS" in connection

with any motion picture or television production. Should the written assurances not be forthcoming, the Plaintiff warned that it would take appropriate legal steps to protect its service mark. The Defendant, in a letter dated February 27, 1985, disputed the Plaintiff's claim to any right to the mark "STAR CHASERS" and refused to abandon its use of that name for its film.

(12) After responding negatively to the Plaintiff's "cease and desist" letter, the Defendant continued to promote "STARCHASER: The Legend of Orin" without further objection from the Plaintiff until it filed its Complaint in this action on August 5, 1985. There was no communication between the Plaintiff and the Defendant from the time the Defendant responded to the Plaintiff's January 10, 1985 letter until Plaintiff's Complaint was filed.

(13) Before receiving the Plaintiff's "cease and desist" letter, the Defendant had spent more than $150,000.00 to promote "STARCHASER: The Legend of Orin." Since receiving the letter, the Defendant has spent more than $320,000.00 in the further promotion of its film.

(14) The Defendant's film is scheduled for world-wide release in late October, 1985. In connection with the release, advertising space has been reserved, copies of the film with the title "STARCHASER: The Legend of Orin" have been printed, and theater bookings throughout the United States have been contracted.

(15) Although the Plaintiff is now in production on its first feature-length episode in "STAR CHASERS" series, that episode is not expected to be ready for release until late 1987. It has marketed video cassettes of "The Trontium Tusk" episode and has been successful in selling the cassette to several libraries.

## CONCLUSIONS OF LAW

(1) The Court has jurisdiction of the subject matter pursuant to 28 U.S.C. § 1338 and 28 U.S.C. § 1332.

■ (2) A preliminary injunction is an extraordinary remedy that is to be granted only upon a substantial showing by the Plaintiff that it is entitled to such drastic relief.. *Puritan Sportswear Corp. v. Shure,* 307 F.Supp. 377 (W.D.Penn.1969). The Plaintiff's burden in this case is particularly heavy since the issuance of a preliminary injunction would in effect grant it a substantial part of the relief it would obtain after a trial on the merits. *See Schneider, Hill & Spangler, Inc. v. Cudmore,* 325 F.Supp. 173 (D.Conn.1971).

■ (3) In deciding whether to issue a preliminary injunction the Court considers the Plaintiff's likelihood of success on the merits, the likelihood of irreparable harm to the Plaintiff if an injunction is not issued, the harm to the Defendant if an injunction is granted, and where the public interest lies. *Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc.,* 550 F.2d 189, 193 (4th Cir.1977). The Fourth Circuit has stated that the most important of these factors are the likelihood of irreparable injury to the Plaintiff if the injunction is not issued and the likely harm to the Defendant if the injunction is granted. *North Carolina State Ports Authority v. Dart Containerline Co., Ltd.,* 592 F.2d 749, 750 (4th Cir.1979).

■ (4) The Plaintiff asserts four counts in its complaint: (1) service mark infringement pursuant to Section 32 of the Lanham Act, 15 U.S.C. § 1114; (2) false designation of origin of services pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair methods of competition pursuant to N.C.Gen.Stat. § 75–1.1; and (4) trademark infringement under the common law. The Plaintiff has focused on its service mark infringement count in its motion for a preliminary injunction.

Service marks are subject to the same protection and requirements as trademarks under the Lanham Act. 15 U.S.C. § 1053. To be successful on its service mark infringement claim, the Plaintiff must show that (1) the Defendant used in commerce a colorable imitation of the Plaintiff's registered mark in connection with the sale, distribution, or advertisement of its servic-

es;˙ (2) the Defendant used the mark without the Plaintiff's consent; and (3) such use is likely to cause confusion between the Defendant's mark and the Plaintiff's registered mark. 15 U.S.C. § 1114(1)(a).

Since the Plaintiff's mark is the title of an artistic work which is merely descriptive of its contents, the Plaintiff must also prove the existence of secondary meaning in its title (*i.e.,* substantial association in the minds of buyers of symbol with source) at the time and place that the Defendant first used its mark. *See Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225 (3d Cir.1978); *Willpat Productions, Inc. v. Sigma III Corp.,* 227 F.Supp. 354 (S.D.N.Y. 1964).

(5) By pointing out the statutory presumptions that accompany its certificate of registration as well as the similarity between the marks and their intended markets, the Plaintiff has made a colorable showing that it has a prima facie case of infringement against the Defendant. Even though the Plaintiff may have a chance of succeeding at trial, however, the absence of strong proof that the Plaintiff would suffer irreparable harm without a preliminary injunction and the presence of clear proof that the Defendant would suffer irreparable harm should an injunction be granted weigh decidedly against the issuance of a preliminary injunction.

(6) The Plaintiff is now in production of a feature-length movie featuring "THE STAR CHASERS," but it was admitted during the hearing that the movie will not be ready for release for at least another two years. Its claim of irreparable harm is based primarily on its contention that the Defendant's PG-rated "STARCHASER" movie, which contains foul language and violence, would "swamp" the Plaintiff's use of its mark for its own G-rated movie. The Plaintiff fears that movie-goers who see the Defendant's movie now will think that all 3D animated science fiction movies with the title "STARCHASER" contain foul language and violence and will be reluctant to send their children to the Plaintiff's G-rated movie two years from now. If the Plaintiff's film were to be released at the same time as the Defendant's film, the likelihood of this feared confusion might be less speculative. Fear of confusion between films marketed and shown two years apart, however, is insufficient evidence that irreparable harm will be suffered. As stated in *Standard Brands, Inc. v. Zumpe,* 264 F.Supp. 254, 267–68 (E.D.La.1967):

> The issuance of an injunction is not justified by the mere fact that irreparable harm may possibly ensue if restraint is not imposed.... Injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties.

(7) Perhaps even more telling of the absence of convincing proof that the Plaintiff would suffer irreparable harm is the Plaintiff's delay in seeking an injunction. The Plaintiff waited seven weeks after learning of the Defendant's film before requesting the Defendant to refrain from using its mark. It waited another seven months after receiving an unsatisfactory response to its request before filing its lawsuit. During that time, the Plaintiff made no further attempt to communicate with the Defendant or to stop the use of its mark, even though it knew that the Defendant's film, "STARCHASER: The Legend of Orin," was scheduled for release in May, 1985.

The Plaintiff explained its delay by stating that it wished to have the benefit of the statutory presumptions that accompany a certificate of registration before it began any legal action. By waiting for its certificate of registration to issue, the Plaintiff may have improved its chances for a permanent injunction. In so waiting, however, it also belied its claim that there is an urgent need for speedy action to protect its rights.

(8) In contrast to the tenuous evidence of irreparable harm to the Plaintiff, the Defendant has presented strong evidence that it would suffer a substantial hardship if it were forced to abandon its use of the title "STARCHASER: The Legend of Orin" at this date.

If the Defendant were ordered to refrain from advertising and releasing its film with its present title, theaters contracted to show the film would be lost, prints of the film would have to be changed, and a new advertising campaign and strategy developed at considerable delay, expense, and embarrassment. The Defendant has already spent over $470,000.00 on its "STAR-CHASER" promotional campaign. It is true that a great deal of that amount was spent with notice of the Plaintiff's claim and without filing an opposition to the registration of the Plaintiff's mark in the Patent and Trademark Office when it had the opportunity to do so. Nonetheless, it would be inequitable to cause the Defendant to lose much of its investment and suffer injury to its good will before a final decision on the merits without a stronger showing of irreparable harm by the Plaintiff.

(9) As there is no strong public interest to be considered here, and as the balance of hardships tips decidedly in favor of the Defendant, the Plaintiff's motion for a preliminary injunction against the Defendant's use of the mark "STARCHASER" should not be granted.

(10) Any finding of fact which is determined to be a conclusion of law is so deemed and any conclusion of law which is determined also to be a finding of fact is so deemed.

IT IS, THEREFORE, ORDERED that Plaintiff's motion for a preliminary injunction is *DENIED*.