927 F.2d 598
 18 U.S.P.Q.2d 1642
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
WILSON-COOK MEDICAL, INCORPORATED, Plaintiff-Appellant,
v.
WILTEK MEDICAL, INCORPORATED, Defendant-Appellee.
 No. 90-2911.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 9, 1991.
Decided March 6, 1991.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Winston-Salem. Norwood Carlton Tilley, Jr., District Judge. (CA-90-206-6)
 Aaron J. Kramer, Schiff, Hardin & Waite, Chicago, Ill., argued, for appellant;
 Ronald Wilder, Linda K. Stevens, Jonathan H. Margolies, Schiff, Hardin & Waite, Chicago, Ill.; M. Daniel McGinn, Jim W. Phillips, Jr., Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C.; Charles R. Reeves, R. Randall Prisk, Woodard, Emhardt, Naughton, Moriarty and McNett, Indianapolis, Ind., on brief.
 James Robert Fox, Bell, Davis & Pitt, P.A., Winston-Salem, N.C., argued for appellee; William K. Davis, Bell, Davis & Pitt, P.A., Winston-Salem, N.C., on brief.
 M.D.N.C.
 AFFIRMED.
 Before SPROUSE and WILKINSON, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Wilson-Cook Medical, Inc. (Wilson-Cook), appeals from the district court's judgment denying it preliminary and permanent injunctive relief. In its action, it claimed that Wiltek Medical, Inc. (Wiltek), committed trademark infringement, copyright infringement, trade dress infringement and trade secret misappropriation when the latter started its company in direct competition with Wilson-Cook. We affirm.
 
 
 2
 * In 1963, William Cook and his wife designed a line of medical catheters, which eventually led to the creation of a group of companies designed to manufacture and supply medical devices to physicians and patients (the Cook Companies). Don and Jon Wilson, father and son respectively, were employed with Cook-Canada. In 1981, they proposed to William Cook that a "spinoff" Cook company be created to apply the catheter concepts developed by the Cook Companies to the field of gastroenterology. As a result, Wilson-Cook Medical, Inc. (Wilson-Cook), was formed, financed entirely with Cook capital. Don and Jon Wilson received twenty percent of the stock in the new company. Jon Wilson became President of Wilson-Cook, Don Wilson Executive Vice-President.
 
 
 3
 Initially, Wilson-Cook was incorporated in Canada, but within a short time it built a manufacturing facility in Winston-Salem, North Carolina, and reincorporated as a North Carolina corporation. Wilson-Cook became a successful corporation, as annual sales rose from $275,000 in 1982 to some $14 million in 1989 and employee numbers from four to eighty-five over the same period.
 
 
 4
 In 1989, Jon Wilson left the employ of Wilson-Cook.[1] Shortly thereafter, Jon Wilson elected to go into the medical supplies business for himself. He found two financial backers who agreed to lend him $500,000 to set up a manufacturing operation near Winston-Salem, North Carolina--the new company eventually being named Wiltek Medical, Inc.
 
 
 5
 Wiltek manufactured the same products as Wilson-Cook, produced a product catalog similar to Wilson-Cook's, and adopted a trade logo similar to that of Wilson-Cook's. As a result, on April 16, 1990, Wilson-Cook filed a complaint for preliminary and permanent injunctive relief and damages against Wiltek. Specifically, Wilson-Cook sought to prevent Wiltek from utilizing the Wiltek name, product catalog and other trade dress features and from presenting and offering its products at the Digestive Disease Week Conference held in San Antonio, Texas, from May 14 through May 18, 1990.[2] Wilson-Cook argued that Wiltek misappropriated trade secrets in establishing its company and its proposed product line, violated copyright law by producing a product catalog similar to the Wilson-Cook product catalog, and violated trademark law by adopting a name and logo similar to the Wilson-Cook name and logo.
 
 
 6
 After a full hearing, the district court denied the relief requested by Wilson-Cook, except to enjoin temporarily the sale and distribution of two devices.[3] Wilson-Cook appeals.
 
 II
 
 7
 In denying injunctive relief, the district court applied the principles set forth in Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir.1977). In Blackwelder, this court stated that in considering injunctive relief, a court must balance four considerations:
 
 
 8
 (1) Has the petitioner made a strong showing that it is likely to prevail upon the merits?
 
 
 9
 (2) Has the petitioner shown that without such relief it will suffer irreparable injury?
 
 
 10
 (3) Would the issuance of the injunction substantially harm other interested parties?
 
 
 11
 (4) Wherein lies the public interest?
 
 
 12
 Id. at 193. The court in Blackwelder referred to this weighing process as a "balance of hardships." Id. at 194. Although the court stated that a proper balance involves a "flexible interplay" among the four delineated factors, it held that the "two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree." Id. at 196.
 
 
 13
 Applying the Blackwelder principles to the trademark, copyright and trade dress issues, the district court found that Wilson-Cook had not shown that it would be seriously injured in the absence of an injunction and that it had an adequate remedy at law--damages. The court also concluded that the "target customers" of the two companies are well-educated and well-informed about the products which they purchase and, thus, the likelihood of customer confusion is substantially less than for a product manufactured and directed toward a general market. Similarly, the court concluded that "[w]hile similarities exist between the trademarks, names, catalogs, and product packaging, there are also readily discernable differences which are sufficient to create a genuine question about the probability of customer confusion in the relevant market." Finally, the district court found that public policy strongly weighed in favor of Wiltek. The harm to Wiltek if the injunction obtained, the court found, far outweighed the harm to Wilson-Cook if it did not, for Wiltek would likely be forced out of business.
 
 
 14
 Wilson-Cook contends that the district court erred in its balancing of the Blackwelder factors, principally arguing that, as a matter of law, irreparable injury to the plaintiff is to be presumed in infringement cases. See Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1254 (3d Cir.1983), cert. dismissed, 464 U.S. 1033 (1984) ("[A] showing of a prima facie case of copyright infringement or reasonable likelihood of success on the merits raises a presumption of irreparable harm."); Processed Plastic Co. v. Warner Communications, Inc., 675 F.2d 852, 858 (7th Cir.1982) (presumption applies to trademark infringement). However, even if this were true, Wilson-Cook still must establish that its irreparable injury outweighs the injury caused to Wiltek if the injunction proceeds.[4] See Maxim's Ltd. v. Badonsky, 772 F.2d 388, 392 (7th Cir.1985) ("what is necessary is that whatever irreparable injury there is to the plaintiff outweigh the injury to the defendant--in this case, outweigh it by a substantial margin") (emphasis in original); Litton Sys., Inc. v. Sundstrand Corp., 750 F.2d 952, 960 (Fed.Cir.1984) (court denied injunction after concluding that issuance would be "catastrophic" to business operations of defendant company). Here, the district court specifically found that the "comparative harms" were unevenly balanced and that an injunction would have a "death penalty effect" on Wiltek. We are not prepared to say that the district court abused its discretion in reaching this conclusion. Caldwell v. United States Dep't of Hous. & Urban Dev., 522 F.2d 4, 5 (4th Cir.1975).
 
 III
 
 15
 Wilson-Cook also contends that the district court applied the wrong legal standard in reaching the misappropriation of trade secrets issue. The district court stated that:
 
 
 16
 Similarly, with regard to the trade secrets question, the record is insufficiently developed to demand a conclusion of misappropriation. While there are inferences supporting the conclusion, there are also questions pertinent to the ultimate finding which should not be decided on such an expedited basis with so devastating a possibility. There are factual questions about what trade practices--formulas, patterns, programs, devices, compilations of information, methods, techniques, or processes--may or may not have been the subject of express and implied authorization, independent development, or reverse engineering and whether efforts to maintain secrecy were reasonable under the circumstances of this particular business.
 
 
 17
 Wilson-Cook contends that it need only prove a "probable right" to injunctive relief and that it need not prove, as the district court suggested, that the record "demand" the granting of injunctive relief. While the district court may have employed the word "demand," its analysis demonstrates that it applied the correct legal standard under Blackwelder. The district court concluded that while there were "inferences" of misappropriation, there were too many unanswered factual questions to conclude that a strong likelihood of success existed on this issue and, in light of the drastic consequences for Wiltek if an injunction obtained, it refused to grant injunctive relief. Again, we are not prepared to say that the district court abused its discretion in reaching this conclusion.
 
 
 18
 In view of the above, the judgment of the district court is affirmed.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 The parties strongly contest the basis for Jon Wilson's departure. The circumstances of Wilson's resignation are the subject of a separate suit pending in North Carolina state court
 
 
 [2]
 The parties agree that this annual conference is the largest of its kinds and that attendance is critical to manufacturers of gastroenterological endoscopy devices. Obviously, participation in the 1990 conference is no longer a relevant concern. However, the other concerns remain relevant
 
 
 [3]
 The district court enjoined these two devices because of safety concerns raised by Wilson-Cook. After further hearings on this matter, the district court modified its ruling, enjoining only one of the two devices
 
 
 [4]
 Wiltek contends that no presumption should apply in the instant case, arguing that Wilson-Cook knew of the former's business plans as early as April 1989, yet "strategically" waited until the eve of the Digestive Disease Week Conference to file suit and that such purposeful delay negates any claim of irreparable harm. See Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir.1985) ("Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement."); John Lemmon Films, Inc. v. Atlantic Releasing Corp., 617 F.Supp. 992, 996 (W.D.N.C.1985) ("Perhaps even more telling of the absence of convincing proof that the Plaintiff would suffer irreparable harm is the Plaintiff's delay in seeking an injunction.")